UNITED STATES COURT OF INTERNATIONAL TRADE

---------------------------------------------------------------------X
RETRACTABLE TECHNOLOGIES, INC.,

                        Plaintiff,

                 v.

UNITED STATES OF AMERICA;
OFFICE OF THE UNITED STATES TRADE
REPRESENTATIVE;
KATHERINE TAI TRADE REPRESENTATIVE;
UNITED STATES CUSTOMS & BORDER
PROTECTION; TROY MILLER, in his capacity as
Senior Official Performing the Duties of
Commissioner, U.S. Customs & Border Protection,

                       Defendants.
---------------------------------------------------------------------X

Civil No. 24-00185

**DECLARATION OF WOOT LERVISIT**

Woot Lervisit declares as follows pursuant to 28 U.S.C. § 1746:

1.    I am a project manager for Retractable Technologies, Inc. ("Retractable"), the Plaintiff in this action.

2.    I am also a licensed attorney eligible to practice law in Texas.

3.    This declaration is based on personal knowledge and review of documents. It is true and accurate to the best of my knowledge and recollection.

**A. My Educational and Professional Background Including at Retractable**

4.    I graduated from Swarthmore College in 2004 and received my J.D. from Southern Methodist University in 2009.

5.    I am involved with the Richardson (Texas) Independent School District and sit or have sat on multiple committees, including the: Equity Council Committee, Bond Steering

Committee, District Budget Steering Committee, and Stults Road Elementary Site Based Decision Making Committee.

6. I serve as Counsel to the Board of Directors of the Buddhist Center of Dallas.

7. I joined Retractable in July 2020 to serve as the project manager for the COVID-19 domestic manufacturing initiative. This project was a collaboration between the government and Retractable and involved a public-private investment of approximately $108 million to establish production lines for hypodermic needles and safety syringes at Retractable's Little Elm, Texas facility.

8. I documented the specifications for the machines and tools for the new production lines and procured those machines and tools during the period of supply chain disruption caused by the COVID pandemic.

9. Retractable's syringes, which feature low-dead-space capability, played a crucial role in the government's COVID-19 vaccination program in early 2021 by extracting additional doses from vaccine vials.

10. This significant contribution led to a joint decision by the government and Retractable to expand the project.

11. Together, Retractable and the American People committed approximately $30 million to establish additional production lines in Little Elm, Texas, further enhancing domestic manufacturing capacity.

12. I am named as one of the company's representatives on the current iteration of the project contract.

13. The contract requires Retractable to give the government preference for syringes and needles made on the project production lines through June 30, 2030.

14. Retractable is ready to fulfill government orders for syringes and needles from the production lines in the event of a public health emergency.

15. Presently, my daily work also includes analyzing sales and marketing data.

16. The COVID project production lines are exclusively designated for vaccination products and cannot make other syringes and needles (e.g. certain insulin syringes) that Retractable needs to sell to have a full product catalog for its customers.

17. The earliest Retractable can make those other syringes and needles (e.g. certain insulin syringes) in America is 2025.

18. Additionally, my daily work includes managing public affairs projects (e.g., these proposed tariffs) including those projects' legal issues.

B. **Background on Retractable Technologies and BD**

19. Retractable has struggled to maintain its market share because of the anticompetitive activities of Becton Dickinson and Company ("BD"), the world's largest manufacturer of injection devices.

20. On information and belief, BD currently controls 70-80% of the hospital hypodermic syringe and needle market.

21. Notably, in the 1960s, the U.S. Department of Justice filed charges against BD for anticompetitive practices like price fixing and illegal tying.

22. After struggling in an artificially closed market, Retractable filed an antitrust suit against BD in 2001.

23. That suit was settled out of court in 2003.

24. There was a second antitrust case between BD and Retractable in which Retractable won a $340 million jury verdict in the district court. However, a federal appeals court overturned that jury verdict in 2016.

25. Additionally, the Department of Justice filed an amicus curiae brief in 2019 in support of a plaintiff that filed an antitrust lawsuit against BD about BD's anticompetitive practices in the syringe market. See *Marion Healthcare, LLC v. Becton Dickinson & Co.*, No. 18-3735 (7th Cir.) (brief for the United States as amicus curiae in support of appellants and vacatur).

26. BD's monopolistic practices in the needle and syringe industry, and its efforts to force Retractable Technologies out of the market, have been the subject of media reporting and publishing.

27. For example, Barry Lynn's book, *Cornered*, originally included a chapter section devoted to BD's monopolistic trade practices in the needle and syringe market and their impact on Retractable Technologies. However, upon information and belief, BD pressured Lynn's publisher to remove this section, resulting in two versions of the book.

28. Upon information and belief, the production lines the government funded for BD during the pandemic are for 3 milliliter syringes and detachable needles. These do not have the low-dead-space feature to obtain extra doses from the COVID vaccine vials like Retractable's

### C. The 2018 Section 301 Tariff Actions and Zero Tariff on Syringes and Needles

29. The United States Trade Representative ("USTR") imposed section 301 tariffs pursuant to its July 6, 2018, and August 23, 2018, actions, as modified ("Two Actions") that it took under section 301 of the Trade Act of 1974, as amended (19 U.S.C. 2411) ("Trade Act"), in the investigation of China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation ("Section 301 Investigation").

30. During those actions, Retractable Technologies' Chief Executive Officer and Founder Thomas Shaw submitted comments concerning a proposed twenty-five percent tariff on syringes and needles.

31. Mr. Shaw's comments explained the anti-competitive impact that such a tariff would have, and the harm that the American people would suffer should Retractable be forced to shut down its business, particularly given the risk of further global health crises.

32. USTR did not impose tariffs in 2018, even when the Two Actions were subsequently modified by imposing additional duties on supplemental lists of products, as well as by the temporary removal of duties on certain products through product exclusions.

33. Thus, not only did Retractable Technologies survive, but it played a pivotal role in the United States government's response to the COVID-19 pandemic by supplying low-dead-space syringes.

34. The original 2018 Section 301 Tariff was modified under Section 307 in 2019 and in 2020 to add additional products (Lists 3 and 4).

35. USTR conducted in-person hearings for both Lists 3 and 4.

**D. The Background of the 2024 Syringe and Needle Tariff**

36. On May 5, 2022, USTR initiated a four-year statutory review of the Two Actions pursuant section 307(c)(3) of the Trade Act (19 U.S.C. 2417(c)(3)).

37. Per the USTR's announcement, the review concerned whether any of the tariffs imposed in the Two Actions *were subject to possible termination* on their respective four-year anniversary dates (i.e., July 6, 2022, and August 23, 2022, respectively).

38. Essentially, this review concerned *ending* tariffs, not adding new tariffs.

39. Accordingly, USTR notified and sought comment from "representatives of domestic industries that benefit from the trade actions" who could ask that tariffs be continued, and not terminated. *See* Initiation of Four-Year Review Process: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 87 FED. REG. 26,797 (May 5, 2022).

40. Retractable Technologies did not submit comments concerning this notice because syringes and needles were not on the list of products under review.

41. In September 2022, USTR announced that it would not terminate tariff actions based on the comments, and that it would conduct a review of the tariff actions.

42. On October 17, 2022, USTR published a notice for interested persons to submit comments with respect to several general considerations, concerning the continuation of tariffs and potential new tariffs. This docket was opened on November 15, 2022.

43. There was no mention of tariffs on syringes or needles and Retractable Technologies did not submit comments regarding the general issues.

44. None of the comments for the November 2022 docket solicited comments pertaining to tariffs on syringes or needles.

45. There was only one request for an additional tariff line in HTSUS 90, the major tariff code in which syringes and needles fall.

46. That request was made by Leupold & Stephens for tariffs on optical equipment for guns. *See* USTR-2022-0014-00035153 (stating that tariffs on manufacturing inputs for spotting scopes, but not finished spotting scopes, has negatively impacted U.S. manufacturing operations).

47. After USTR received these comments, it apparently convened a committee that deliberated during the entirety of 2023 and early 2024.

48. Upon information and belief, BD used its political influence during this time to persuade the Department of Commerce and the White House National Economic Council to urge President Biden to add a syringe and needle tariff.

49. Upon information and belief, BD's CEO, Tom Polen, has close ties to Secretary of Commerce Gina Raimondo.

50. Mr. Polen worked with Secretary Raimondo during the COVID-19 pandemic to procure microchips for machines and tools for BD production lines for various medical devices.

51. He serves on Sec. Raimondo's Advisory Committee on Supply Chain Competitiveness, where he spoke about the need for government action for syringes and needles at an August 2023 meeting.

52. This was all but confirmed in Polen's January 2024 interview with Jim Cramer when Polen and Cramer discussed the effect of higher prices for medical devices if they were to be made in America.

53. The August 2023 meeting also revealed that Polen had conversations with Monica Gorman, National Economic Council Special Assistant to the President for Manufacturing & Industrial Policy in the White House, about actions the federal government could take to support the domestic supply chain for drug delivery devices.

54. On March 7, 2024, USTR published a notice requesting comments on promoting supply chain resilience with post-hearing comments due May 16, 2024.

55. On April 3, 2024, USTR published a notice extending the post-hearing comments due date to June 4, 2024.

56. This notice on its face was not connected to USTR's Section 301 inquiry.

57. Nonetheless, on April 22, 2024, BD submitted comments concerning supply chain resilience of drug delivery devices that urged "USTR to leverage section 301 and other trade measures to protect our national security and public health in areas." Comment Letter from Elizabeth Woody, Senior Vice President, Public Affairs, BD, to Juan Millán, Acting Gen. Counsel, and Victor Ban, Assistant Gen. Counsel, Off. of the U.S. Trade Representative, Re: Comments on Promoting Supply Chain Resilience [Docket Number USTR-2024-0002] (Apr. 22, 2024).

58. Importantly, syringes and needles are drug delivery devices, not personal protective equipment.

59. In a May 2, 2024, USTR "Public Hearing on Promoting Supply Chain Resilience," a representative from the Coalition for Prosperous America repeated a false narrative about Chinese syringes being "substandard."

60. In fact, the Chinese syringes were not "substandard." Rather, upon information and belief, an American company did not confirm that the syringes it ordered from a new Chinese manufacturer had the correct design specifications.

61. Upon information and belief, Coalition for a Prosperous America provides consulting services to BD.

62. I spoke to Coalition for a Prosperous America in July and learned that they could not work with Retractable because they were working with BD.

63. The Antitrust Division of the United States Department of Justice commented on this docket saying, "Any proposal to increase supply chain resilience that would result in increased consolidation in an industry that already is highly concentrated therefore should be with skepticism." Comment of the Antitrust Div., U.S. Dep't of Just. on Promoting Supply Chain Resilience [Comment ID USTR-2024-0002-0152] (Apr. 22, 2024).

64. To my surprise, on May 14, 2024, USTR sent a report to President Biden urging him to direct a tariff on syringes and needles. *Four-Year Review of Actions Taken In The Section 301 Investigation: China's Acts, Policies, And Practices Related To Technology Transfer, Intellectual Property, And Innovation.*

65. After discussing tariffs on personal protective equipment, such as "medical/surgical gloves and face masks, including N95s," the USTR report blithely claims, "increasing section 301 duties on syringes and needles, which are critical to U.S. preparedness and response to public health emergencies, will help maintain alternative sources."

66. The USTR provided no evidence, nor do any comments received by the USTR, support this statement. To the contrary, imposing tariffs on syringes will *decrease* alternative sources.

67. Retractable Technologies was terrified to learn that, on the same day he received USTR's report, President Biden issued a May 14, 2024, "Memorandum on Actions by the United States Related to the Statutory 4-Year Review of the Section 301 Investigation of China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation" (the "Memorandum").

68. The Memorandum states that USTR is directed to impose ad valorem tariffs on new categories of products. It specifically states: "For personal protective equipment (facemasks, medical gloves, and syringes and needles), the Trade Representative is directed to increase rates of duty to no less than . . . 50 percent in 2024."

69. Notably, syringes and needles are *not* personal protective equipment ("PPE") and their inclusion in this list is a categorical error.

70. This error was, upon information and belief, the result of BD's discussion with Raimondo and Gorman, the "supply chain resilience" inquiry, and USTR's flawed review process that did not give notice to Retractable Technologies of its intention to impose new tariffs on needles and syringes.

71. I submitted comments to USTR on June 4 about supply chain resiliency with information specifically regarding syringes and needles and in support of DOJ's comments of making sure that USTR action does not have anticompetitive effects and the misunderstanding of Coalition for Prosperous America. Comment from Woot Lervisit, Project Manager, Retractable Techs., Inc., to Juan Millan, Acting Gen. Counsel, & Victor Ban, Special Counsel, Off. of the U.S. Trade Representative, on Promoting Supply Chain Resilience [Comment ID USTR-2024-0002-0293] (June 4, 2024).

### E. Comments to USTR Request

72. On May 28, 2024, the USTR request for comments on the tariff was published in the Federal Register.

73. I submitted comments on June 28, 2024, although I gleaned from my discussions with various Congressional staffers and policy people in D.C. that my comments would be ineffective because a tariff was at that time *fait accompli*. See Comment from Woot Lervisit, Project Manager, Retractable Techs., Inc., to Katherine Tai, U.S. Trade Representative, on Promoting Supply Chain Resilience [Comment ID USTR-2024-0007-00108478] (June 28, 2024).

74. At this time USTR was limiting its inquiry to whether tariffs should exceed 50%.

75. I found three non-duplicate comments in support of tariff rates more than 50%.

76. They were from BD, Coalition for a Prosperous America, and American Medical Manufacturing Association. See Comment from Am. Med. Mfrs. Ass'n to Katherine Tai, U.S.

Trade Representative, on China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation [Comment ID USTR-2024-0007] (June 28, 2024); Comment from Charles Benoit, Trade Counsel, Coal. for a Prosperous Am., to Juan Millan, Acting Gen. Counsel, Off. of the U.S. Trade Representative, on Proposed Modifications to the Section 301 Actions and Proposed Exclusion Process [Comment ID USTR-2024-0007] (June 26, 2024); Comment from Elizabeth Woody, Senior Vice President, Pub. Affs., Becton, Dickinson & Co., to Juan Millán, Acting Gen. Counsel, Off. of the U.S. Trade Representative, on Proposed Modifications to the Section 301 Actions and Proposed Exclusion Process [Comment ID USTR-2024-0007] (June 28, 2024).

77. BD asked for the "maximum tariff level available."

78. Coalition for a Prosperous America asked for "a specific tariff of $1 per syringe, or higher."

79. In a virtual meeting, Coalition for a Prosperous America told me that they had known of only one manufacturer of syringes in the U.S. and that they were providing consulting services to that manufacturer.

80. American Medical Manufacturing Association asked for "a minimum of 100%."

81. In a virtual meeting, American Medical Manufacturing Association told me that Retractable should not think about joining their organization because BD was a board member.

82. Upon information and belief, American Medical Manufacturing Association only dealt with personal protective equipment and was not involved with syringes or needles until when BD joined in May 2024.

83. I reviewed all the public comments and noted no other comments in support of a rate increase above 50%.

84. There were, however, comments from Medline Industries – a national healthcare distributor to hospitals and other providers (Comment ID USTR-2024-0007-00108253), a comment from AHCA/NCAL – a national association for long-term care providers (Comment ID USTR-2024-0007-00108126), and other comments from healthcare providers discussing how the proposed 50% tariff in 2024 would cause anticompetitive effects in the domestic syringe and needle industry.

85. There were also comments from GPOs, other healthcare distributors, providers, and industry associations discussing the need to delay implementation of the tariffs for public health reasons.

86. USTR did not address these anticompetition and timeline concerns in their September 13, 2024, notice of modification.

87. USTR has not held any in-person hearings for these tariff modifications.

**F. Federal Officials Told Me It Was Too Late When I Attempted to Consult on the Issue**

88. In a virtual meeting on June 14, 2024, I told Retractable's Administration for Strategic Preparedness and Response ("ASPR") contact that the tariffs would harm Retractable and requested that ASPR inquire about delaying the effective date because Retractable is a critical facility for public health emergencies and pandemic response.

89. Understanding that Retractable needed an effective date in 2025, ASPR instructed me to comment on the docket and that he would share our concerns to the government.

90. On or around July 18, 2024, I was told by ASPR that interagency decision makers were committed to the 2024 date.

91. On or around July 17, 2024, I spoke with Section 301 co-chair Philip Butler.

92. I specifically brought up the statutory requirement that USTR consult with "representatives of the domestic industry concerned" in Section 307(a)(2). I inquired why USTR failed to consult with Retractable or any domestic industry representative before deciding to impose the tariff.

93. From our discussion, I understood that USTR does not believe the consultation requirement means it should *actually* consult with "representatives of the domestic industry concerned."

94. Rather, upon information and belief, USTR contends that merely requesting comments satisfies both the requirement to consult with representatives concerned with new tariffs and the requirement to "provide opportunity for the presentation of views by other interested persons," even though Section 307(a)(2) separates the two requirements.

95. Finding no avenue with the Section 301 committee, I spoke to representatives at the U.S. Department of Commerce International Trade Administration Office of Health and Information Technologies to understand what Retractable Technologies could do to stop the imposition of this tariff.

96. They informed me that changes were impossible following the USTR's proposed modifications in May 2024.

97. I also talked to Sean Christiansen from the National Economic Council.

98. He told me to talk to the Department of Health and Human Services ("HHS").

99. I then spoke with the FDA Office of Supply Chain Resilience, which said that interagency decisions were out of their control.

100. I even spoke with the Chief Counsel for Trade Enforcement Strategy and Competitiveness at USTR. However, he told me that USTR has knowledgeable people who

understood the issues regarding Chinese syringe and needle tariffs without needing consultation from small businesses in the industry.

101. As a last-ditch effort, I made Freedom of Information Act requests to find out what USTR had done to consult with "concerned" domestic industry representatives before imposing this syringe and needle tariff.

102. Although I received an email simply confirming that I had a conversation with Mr. Butler, USTR did not confirm how they complied with the consultation requirement or otherwise respond to this Freedom of Information Act request.

103. In crushing news to Retractable Technologies, on September 13, 2024, USTR announced a *one hundred percent* tariff on syringes and needles, effective September 27, 2024, but with an arbitrary exclusion for enteral (feeding) syringes until January 1, 2026.

**G. USTR and the President's Decision to Impose a Tariff is Arbitrary and Capricious**

104. Based on my work with Retractable, I can say beyond the shadow of a doubt that the September 27, 2024, effective date will not promote supply chain resilience or benefit the American public.

105. I can affirm categorically that the 100% tariff rate on syringes and needles will not promote supply chain resilience or benefit the American public.

106. Instead, a 100% tariff beginning on September 27, 2024, will eliminate from the market the syringe that proved most critical during the COVID-19 vaccination program, while serving BD a government-sanctioned monopoly on a silver platter.

107. This will decimate the United States's needle and syringe supply chain, which are critical public health technologies.

108. From its inception in the Four-Year Review report and the President's Memorandum, the decision to impose a tariff on syringes and needles has been patently irrational.

109. For instance, classifying needles and syringes as PPE was a categorical error on the part of the President. Syringes and needles are not PPE under any accepted industry definition or classification.

110. There is no rational basis for the proposed tariff on syringes and needles. Not even the USTR's comprehensive report on Section 301 actions identifies a rational basis for including needles and syringes with PPE.

111. Retractable Technologies would have provided comments and consultation as it did in 2018 if USTR had at any time indicated its intention to expand Section 301 tariffs to syringes and needles, or even to the larger category of medical devices.

112. Our comments and consultations would have informed USTR of the disastrous consequences of its proposed tariff before it advised the President to take this action.

113. Instead, USTR did not consult with Retractable or provide notice of its intention to expand syringe and needle tariffs beyond an invitation to comment in general regarding supply chain resilience with a deadline after USTR's announcement on May 14, 2024.

114. Retractable is currently tooling equipment to onshore needle and syringe production, but it will take until 2025 to go through FDA required processes and begin manufacturing.

115. Meanwhile, tariffs are scheduled to go into effect in mere days.

116. Enforcement and collection starting September 27, 2024, of a one hundred percent tariff on all syringes and needles imported from China will be catastrophic for Retractable and its employees.

117. This tariff will lead to a loss of hundreds of American jobs and will be the death knell for life-saving technology that was funded in large part by American taxpayers.

118. Left with no other options, I consulted with counsel to bring a legal challenge to the tariff.

119. These efforts were hindered because of many law firms' conflicts of interest.

120. Thankfully, we were able to retain non-conflicted counsel, and I now respectfully submit this declaration in support of Retractable's motion for temporary restraining order and preliminary injunction.

I declare under penalty of perjury that the above is true and correct.

Executed on this 25 day of September 2024

_____
Woot Lervisit