Slip Op. 24-120

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **RETRACTABLE TECHNOLOGIES, INC.,** | |
| **Plaintiff,** | **Before: Claire R. Kelly, Judge** |
| **v.** | |
| **UNITED STATES ET AL.,** | **Court No. 24-00185** |
| **Defendant.** | **PUBLIC VERSION** |

## <u>OPINION AND ORDER</u>

[Denying in part and granting in part Plaintiff's motion for a temporary restraining order and preliminary injunction.]

Dated: October 28, 2024

<u>Lawrence M. Friedman,</u> Barnes, Richardson, & Colburn, LLP, of Chicago, IL and <u>Siddartha Rao,</u> Romano Law PLLC, of New York, NY, argued for plaintiff Retractable Technologies, Inc. Also on the briefs were <u>Curtis H. Fuller,</u> and <u>Danielle Yurkew,</u> Romano Law PLLC, of New York, NY.

<u>Emma E. Bond</u>, Lead Attorney, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, of Washington D.C., for defendant United States et al.  Also on the briefs were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director.  Of counsel were <u>Megan M. Grimball</u> and <u>Philip A. Butler</u>, Office of the United States Trade Representative, and <u>Emma L. Tiner</u>, Office of the Assistant Chief Counsel, U.S. Customs and Border Protection.

Kelly, Judge: Before the Court is Plaintiff Retractable Technologies, Inc.'s, ("Plaintiff") motion for a temporary restraining order ("TRO") and preliminary injunction ("Preliminary Injunction Motion").  <u>See generally</u> [Pl. Mot.], Sept. 26, 2024, ECF No. 5.  Plaintiff challenges the United States Trade Representative's ("USTR") imposition of 100% tariffs on syringes and needles from China in its Notice of

Court No. 24-00185                                                                 Page 2
**PUBLIC VERSION**

Modification: <u>China's Acts, Policies and Practices Related to Technology Transfer,</u>
<u>Intellectual Property and Innovation</u> ("<u>September 18 Modification Notice</u>"), 89 Fed.
Reg. 76,581-02 (Sept. 18, 2024), and its motion seeks injunctive relief to prevent the
collection of those tariffs, or alternatively enjoin liquidation of its entries subject to
the tariffs.  <u>See generally</u> Compl., Sept. 26, 2024, ECF No. 4.  Defendant filed its
Motion to Dismiss and Opposition to Preliminary Injunction ("Def. MTD") on October
11, 2024.  <u>See generally</u> Def. Mot. Dismiss and Opp. [Prelim. Inj.], Oct. 11, 2024, ECF
No. 33.  The Court held an evidentiary hearing on October 17, 2024, <u>see</u> ECF No. 46,
and now rules solely on Plaintiff's Preliminary Injunction Motion.[1]

## BACKGROUND

Plaintiff states that Retractable Technologies, Inc., founded in 1997, is a small
company based in Little Elm, Texas.  Compl. at ¶ ¶ 18, 29, 37, 39. Plaintiff explains
that it partners with Chinese manufacturers to produce its syringes and needles.  Id.
at ¶ ¶ 54–56.

On August 14, 2017, the President of the United States directed the USTR to
determine whether it should initiate an investigation under Section 302(b) of the
Trade Act of 1974 (as amended 19 U.S.C. § 2412(b) into China's practices relating to
intellectual property, innovation, and technology.  <u>Addressing China's Laws, Policies,</u>
<u>Practices, and Actions Related to Intellectual Property, Innovation, and Technology,</u>

---

[1] Plaintiff's Response to Defendant's Motion to Dismiss is not due until November 19,
2024.  <u>See</u> ECF No. 39; USCIT R. 7(d).

Court No. 24-00185                                                     Page 3
**PUBLIC VERSION**

82 Fed. Reg. 39,007 (Aug. 14, 2017).  On August 24, 2017, the USTR formally initiated

an investigation to determine whether "acts, policies, and practices" of the Chinese

government related to "technology transfer, intellectual property, and innovation"

were actionable under the Trade Act of 1974.  Initiation of Section 301 Investigation;

Hearing; and Request for Public Comments: China's Acts, Policies, and Practices

Related to Technology Transfer, Intellectual Property, and Innovation, 82 Fed. Reg.

40,213 (Aug. 24, 2017).  On March 22, 2018, the USTR published its findings in the

Section 301 investigation and found that certain actions by the Chinese government

are "unreasonable or discriminatory."  OFFICE OF THE UNITED STATES TRADE

REPRESENTATIVE, Findings of the Investigation into China's Acts, Policies, And

Practices Related to Technology Transfer, Intellectual Property, and Innovation

Under Section 301 of the Trade Act of 1974 at 153 (Mar. 22, 2018)

(https://ustr.gov/sites/defualt/files/Section%20301%20FINAL.PDF)    ("Section 301

Investigation Findings").

Also on March 22, 2018, the President ordered the USTR to publish a proposed

list of products and intended tariff increases on the products, to be followed by a

period of notice and comment and then a final list and implementation of the tariffs

imposed.  Actions by the United States Related to the Section 301 Investigation of

China's Laws, Policies, Practices, or Actions Related to Technology Transfer,

Intellectual Property, and Innovation, 83 Fed. Reg 13,099 (Mar. 22, 2018).  On April

3, 2018, the USTR announced a proposed list of products on which to impose an

additional duty of 25 percent and sought comments from interested parties on the list.  See generally OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation (Apr. 3, 2018) (https://ustr.gov/sites/default/files/files/Press/Releases/301FRN.pdf) ("April 2018 Notice").

In response to the April 2018 Notice, Plaintiff submitted comments opposing tariffs on syringes and needles.  Compl. at ¶ ¶ 69–70.  On June 15, 2018, the USTR released its list of products subject to additional tariffs under the Section 301 action against China, which did not include additional tariffs on syringes and needles under HTSUS subheadings 90183100 and 90183200.  See Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 83 Fed. Reg.  28,710 (Jun. 15, 2018).

On May 5, 2022, the USTR initiated a review of the Section 301 actions, allowing for parties who benefit from the actions to submit requests to continue the action as well as detailing the next steps for review if an interested party does request a continuance of the action.  See Initiation of Four-Year Review Process: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 87 Fed. Reg 26,797 (May 5, 2022).  On September 8, 2022, the USTR

announced that the Section 301 actions would not terminate and would remain in effect, "subject to possible further modifications, including any modifications resulting from the statutory four-year review. Continuation of Actions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 87 Fed. Reg. 55,073-01 (Sept. 8, 2022). On October 17, 2022, the USTR sought public comments "on the effectiveness of the actions in achieving the objectives of the investigation, other actions that could be taken, and the effects of such action on the United States, including consumers" and "the effects of the actions on U.S. supply chain resilience." Request for Comments in Four-Year Review of Actions Taken in the Section 301 Investigation: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation ("October 17 Request for Comment"), 87 Fed. Reg. 62,914-02 (Oct. 17, 2022). Plaintiff alleges that in the "nearly 1,500" comments that the USTR received, none referenced syringes or needles. Compl. at ¶¶ 98–99.

On March 7, 2024, the USTR requested comment on objectives and strategies to advance United States Supply chain resilience, specifically requesting comment on "examples of trade and investment policy tools that potentially could be deployed in the following sectors to enhance supply chain resilience." Request for Comments on Promoting Supply Chain Resilience, 89 Fed. Reg. 16,608-02 (Mar. 7, 2024) ("Supply Chain Notice"). The Supply Chain Notice explicitly mentioned the "pharmaceutical and medical goods" sector. See id. According to Plaintiff, the USTR received

comments, as well as testimony relating to the imposition of additional tariffs on syringes and needles. Compl. at ¶¶ 110–111; ("Supply Chain Comments"). On May 14, 2024, the USTR reported to the President that "increasing section 301 duties on syringes and needles, which are critical to U.S. preparedness and response to public health emergencies, will help maintain alternative sources." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Four-Year Review Of Actions Taken In The Section 301 Investigation: China's Acts, Policies, And Practices Related To Technology Transfer, Intellectual Property, And Innovation, at 86 (May 14, 2024) (https://ustr.gov/sites/default/files/USTR%20Report%20Four%20Year%20Review%2 0of%20China%20Tech%20Transfer%20Section%20301.pdf) ("Four-Year Report").

On the same day the USTR issued its Four-Year Report to the President, May 14, 2024, the President directed the USTR to increase rate to no less than 50 percent in 2024 on syringes and needles. Actions by the United States Related to the Statutory 4-Year Review of the Section 301 Investigation of China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation ("May 14 Presidential Directive"), 89 Fed. Reg. 44,541 (May 14, 2024). On May 28, 2024, the USTR requested public comments on the tariffs relating to "facemasks, medical gloves, syringes and needles, whether the tariff rates should be higher than the proposed rates." Request for Comments on Proposed Modifications and Machinery Exclusion Process in Four-Year Review of Actions Taken in the Section 301 Investigation: China's Acts, Policies, and Practices Related to Technology

Transfer, Intellectual Property, and Innovation ("May 28 Request for Comment"), 89

Fed. Reg. 46,252 (May 28, 2024).  Plaintiff submitted comments explaining that the

"fifty percent tariff would devastate" it.  Compl. at ¶¶ 134–135.  On September 18,

2024, the USTR imposed a one hundred percent tariff on syringes and needles to take

effect on September 27, 2024.  September 18 Modification Notice, 89 Fed. Reg. 76,581-

02 (Sept. 18, 2024) ("301 Tariffs").  Plaintiff commenced this action on September 26,

2024.  See generally Compl.; Preliminary Injunction Motion.

## JURISDICTION AND STANDARD OF REVIEW

Plaintiff commenced this action pursuant to 28 U.S.C. § 1581(i)(1)(B) (2018),

which grants the court "exclusive jurisdiction of any civil action commenced against

the United States ... that arises out of any law of the United States providing for ...

tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other

than the raising of revenue."[2]  The Court has "all the powers in law and equity of, or

as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585.

---

[2] Defendant asserts defenses upon which there will be further briefing, namely: that the Court lacks jurisdiction because the USTR's determination is unreviewable, that the President is not subject to the Administrative Procedure Act; that the determination falls under the foreign affairs exemption to the APA; and that the Plaintiff has failed to state a claim; and.  Def. MTD at 15–28.  At this stage of the litigation none of these defenses is so clear cut as to undermine Plaintiff's fair chance of success.  Moreover, this Court has recently ruled under similar circumstances that the USTR's Section 301 determination is both reviewable and not subject to the APA's foreign affairs exemption.  In Re Section 301 Cases II, 570 F.Supp.3d at 1323–26,

(footnote continued)

The Court may issue injunctive relief in the form of a preliminary injunction or temporary restraining order pursuant to United States Court of International Trade Rule 65.  USCIT R. 65; see also Harmoni Int'l Spice, Inc. v. United States, 211 F. Supp. 3d 1298, 1306 (Ct. Int'l Trade 2017).  Injunctive relief is "an extraordinary remedy never awarded as of right."  Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  To obtain injunctive relief a party must demonstrate: "(1) likelihood of success on the merits, (2) irreparable harm absent immediate relief, (3) the balance of interests weighing in favor of relief, and (4) that the injunction serves the public interest."  Silfab Solar, Inc. v. United States, 892 F.3d 1340, 1345 (Fed. Cir. 2018) (citing Winter, 555 U.S. at 20).

## DISCUSSION

Plaintiff seeks to enjoin the imposition of the 301 Tariffs on its entries, or alternatively to enjoin liquidation of its entries, claiming that (1) it will likely succeed in its suit to challenge the 301 Tariffs because "the USTR improperly exercised its statutory authority when imposing a one hundred percent tariff on syringes and needles under Section 301 of the Trade Act," (2) without an injunction it will suffer irreparable harm, and (3) the injunctive relief is in the public interest and the harm

---

1335–37 (discussing that the bar on judicial review in Franklin is limited to instances where the President has constitutional or statutory responsibility for the final step necessary for agency action to affect the parties and that the APA's foreign affairs exemption does not apply to USTR action where it is not invoked in a final rule and where the manner in which the USTR conducts its proceedings does not make clear the USTR's intent to invoke the exemption).

it will suffer without injunctive relief outweighs the harm the Defendant will suffer

if the relief is granted.  Preliminary Injunction Motion at 10–26.  Defendant responds

that Plaintiff "fails to establish irreparable harm or likelihood of success on the

merits, and the remaining equitable factors–balancing of the harms and the public

interests—favor denying the requested relief."  Def. MTD at 28.  For the following

reasons, Plaintiff's Preliminary Injunction Motion is denied in part and granted in

part.

## I.    Likelihood of Success on the Merits

Plaintiff asserts that it is likely to succeed on its claims that the USTR's actions

were ultra vires.  Compl. at ¶¶174–78; see also Preliminary Injunction Motion at 11–

21.   Plaintiff also argues that it will succeed on its claim that the USTR's

determination violated the procedural protections of the Administrative Procedure

Act ("APA").   Id.; see also Preliminary Injunction Motion at 22–24.  Defendant

responds that Plaintiff misunderstands the nature of the Section 301 inquiry, and

that the USTR complied with the requirements of the statute as well as the

requirements of the APA.  Def. MTD at 36–41.

A movant's likelihood of success is viewed on a sliding scale, i.e., the greater

the potential harm, the lesser the burden required for the likelihood of success on the

merits.  See Ugine & Alz Belgium v. United States, 452 F.3d 1289, 1293

(Fed.Cir.2006); see also In re Section 301 Cases, 524 F. Supp. 3d 1355, 1367 (Ct. Int'l

Trade 2021) ("In re Section 301 Cases I") (discussing the sliding scale approach).

Thus, the Court may reasonably consider not only whether a movant is likely to prevail on the merits, but whether the issue to be appealed constitutes a "substantial case on the merits." See Hilton v. Braunskill, 481 U.S. 770, 778 (1987); In re Section 301 Cases I, 524 F. Supp. 3d at 1366 (examining whether the plaintiffs had raised sufficiently serious and substantial questions as to the proper interpretation of the statute because the danger of irreparable harm was great).

Here, while at this stage of the litigation the Court cannot say that the Plaintiff is likely to succeed, the Plaintiff raises serious and substantial questions. Section 301 of the Trade Act authorizes the President and the USTR to take action to eliminate certain acts, policies, or practices of a foreign government that burden U.S. commerce. See 19 U.S.C. § 2411. The USTR exercises discretionary authority when it determines "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce" and action by the United States is appropriate. 19 U.S.C. § 2411(b)(1). Additionally, Section 307(a)(1) of the Trade Act allows the USTR to "modify" an action commenced under Section 301:

> (a) In general
> (1) The Trade Representative may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, that is being taken under section 2411 of this title if--
>
> (A) any of the conditions described in section 2411(a)(2) of this title exist,

Court No. 24-00185                                                                Page 11
**PUBLIC VERSION**

      (B) the burden or restriction on United States commerce of the denial rights, or of the acts, policies, and practices, that are the subject of such action has increased or decreased, or

      (C) such action is being taken under section 2411(b) of this title and is no longer appropriate.

      (2) Before taking any action under paragraph (1) to modify or terminate any action taken under section 2411 of this title, the Trade Representative shall consult with the petitioner, if any, and with representatives of the domestic industry concerned, and shall provide opportunity for the presentation of views by other interested persons affected by the proposed modification or termination concerning the effects of the modification or termination and whether any modification or termination of the action is appropriate.

19 U.S.C. § 2417(a)(1).  An action will terminate at the end of four years unless there

is a request to continue it in writing from the petitioner or domestic industry.  19

U.S.C. § 2417(c) (1).  Where there is such a request, the USTR conducts a review of

necessity:

      (3) If a request is submitted to the Trade Representative under paragraph (1)(B) to continue taking a particular action under section 2411 of this title, or if a request is submitted to the Trade Representative under section 2416(c)(2) of this title to reinstate action, the Trade Representative shall conduct a review of--

(A) the effectiveness in achieving the objectives of section 2411 of this title of--

(i) such action, and

(ii) other actions that could be taken (including actions against other products or services), and

(B) the effects of such actions on the United States economy, including consumers.

19 U.S.C. § 2417(c)(3).  Before the USTR takes any action to modify it must both

consult with the domestic industry and provide the opportunity for those affected to

comment:

> (2) Before taking any action under paragraph (1) to modify or terminate any action taken under section 2411 of this title, the Trade Representative shall consult with the petitioner, if any, and with representatives of the domestic industry concerned, and shall provide opportunity for the presentation of views by other interested persons affected by the proposed modification or termination concerning the effects of the modification or termination and whether any modification or termination of the action is appropriate.

19 U.S.C. § 2417(a)(2).

The APA requires that agencies engage in reasoned decision-making, meaning that upon review courts will consider whether the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Alabama Aircraft Indus., Inc. v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (internal quotation marks omitted) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

Here, Plaintiff claims that the USTR failed to consult with it as required by 19 U.S.C. § 2417(a)(2). Preliminary Injunction Motion at 19–22. The question of whether there was a proper consultation under Section 2417(a)(2) is a serious and substantial one, as it implicates both the President's and the USTR's authority under Sections 307(a)(1)(B)–(C) of the Trade Act. In re Section 301 Cases I, 524 F. Supp. 3d

at 1366-67.[3]  Defendant points to the USTR's October 2022 and May 2024 notices as

sufficient consultation.  Def. MTD at 24.  The October 17, 2022, notice invited

comment on inter alia, the effectiveness of the actions, in achieving the objectives of

the investigation, the effect of such actions on U.S. supply chain resilience, and the

possibility of other actions that would be more effective in achieving the goals of the

investigation. October 17 Request for Comment, 87 Fed. Reg. 62,914–02 (Oct. 17,

2022).  The May 2024 Notice asked for comments on "whether the tariff rates should

be higher than the proposed rates" for syringes and needles.  See May 28 Request for

Comment.  There is a serious and substantial question as to whether these two

notices satisfy the requirements of 19 U.S.C. § 2417 (a)(2) in this case.

Defendant also contends that Plaintiff is unlikely to succeed on its claims that

the USTR failed to engage in reasoned decision-making.  Compl. at ¶ 167.  Plaintiff

argues that the USTR provided interested parties with the opportunity to express

views with its October 17, 2022, notice for comment, but failed to consult the

interested parties until after it proposed adding tariffs on syringes and needles to the

President.  Preliminary Injunction Motion at 20, 22.  Plaintiff also argues that the

---

[3] In that case, this Court concluded that an injunction against liquidation was warranted.  Ultimately, the Court subsequently found that the USTR did not exceed its modification authority under Section 307, In re Section 301 Cases II, 570 F. Supp. 3d 1306, 1334–35 (Ct. Int'l Trade 2022), and that the USTR complied with the Court's remand order and supplied the necessary explanations supporting the imposition of additional duties.  In re Section 301 Cases, 628 F. Supp. 3d 1235, 1250 (Ct. Int'l Trade 2023) (In re Section 301 Cases III).  In re Section 301 Cases III is currently on appeal, (Fed. Cir. No. 23-1891).

Supply Chain Comments improperly influenced the ultimate determination.[4]
Preliminary Injunction Motion at 20–21.  The President directed the USTR to raise
tariffs on syringes and needles to no less than 50 percent in 2024, prior to the USTR
requesting comment on tariff increases specifically related to syringes and needles.
See May 14 Presidential Directive, 89 Fed. Reg. 44,541(May 14, 2024); see also May
28 Request for Comment, 89 Fed. Reg. 46,252 (May 28, 2024).  Although it is unclear
whether Plaintiff will prevail on its claims, at this stage in the litigation Plaintiff
establishes sufficiently serious questions as to whether the requirements regarding
reasoned decision-making have been met.  See State Farm, 463 U.S. at 52.

## II.    Irreparable Harm.

Plaintiff asserts that it will suffer irreparable harm absent an injunction
because it will have to make the "impossible choice" between stopping all orders of

---

[4] In its recommendation to the President to impose tariffs on needles and syringes
the report provides:

> Increasing the section 301 duties on critical medical supplies,
> including certain personal protective equipment, will help protect recent
> investments to increase domestic production and U.S. preparedness and
> as a result of those investments, the United States has, or is expected to
> have, sufficient domestic capacity. These products include
> medical/surgical gloves and face masks, including N95s. Similarly,
> increasing section 301 duties on syringes and needles, which are critical
> to U.S. preparedness and response to public health emergencies, will
> help maintain alternative sources.

Four-Year Report at 86.

syringes from its suppliers or ordering and selling syringes at a loss. Compl. ¶¶ 159–

60. Defendant responds that Plaintiff merely alleges the "possibility of garden-

variety economic loss" which fails to satisfy the irreparable harm requirement for

injunctive relief. Def. MTD at 30. Further, Defendant states it will agree to not

oppose a court order for reliquidation, which it claims will remove any danger posed

by the possible liquidation of entries. Id. at 30–31 (citing Joint Proposed Stipulation

in Auxin Solar, Inc. et al. v. United States et al., Ct. Int'l Trade No. 23–274, Jan. 25,

2024, ECF No. 19). For the reasons that follow, the Court finds that Plaintiff has not

demonstrated it will suffer irreparable harm absent injunctive relief other than the

harm that could result from the liquidation of its entries which the Court will enjoin.

Irreparable harm is serious injury which cannot be undone. Zenith Radio

Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983) (citing S.J. Stile Assoc.

Ltd. v. Snyder, 646 F.2d 522, 525 (C.C.P.A. 1981)). This Court has long recognized

that a movant's burden to prove irreparable harm is "extremely heavy." See Queen's

Flowers de Colombia v. United States, 947 F. Supp. 503, 506 (Ct. Int'l Trade 1996);

see also Shandong Huarong Gen. Group Corp. v. United States, 122 F.Supp.2d 1367,

1369 (Ct. Int'l Trade 2000); see also Int'l Fresh Trade Corp. v. United States, 26

F.Supp.3d 1363, 1367 (Ct. Int'l Trade 2014). A movant will not be able to obtain an

injunction by pointing to an injury which is merely possible, even when the potential

level of harm is high. Zenith, 710 F.2d at 809. "A presently existing, actual threat

must be shown." Id.; see e.g., Shree Rama Enter. v. United States, 983 F. Supp. 192,

194-95 (Ct. Int'l Trade 1997) (citing Zenith, 710 F.2d at 809).  A movant must show

that the harm is certain to occur and that it is a direct result of the action it is

challenging.  See e.g. Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985)

("the movant must show that the alleged harm will directly result from the action

which the movant seeks to enjoin").  Allegations only of what is "likely" to occur are

of "no value."  See Wisconsin Gas Co.,758 F.2d at 674.

In general, claims of financial loss do not constitute irreparable harm.

Sampson v. Murray, 415 U.S. 61, 90 (1974).  However, bankruptcy or a substantial

loss of business may constitute irreparable harm because those events render a final

judgment ineffective and deprive movant of "meaningful judicial review."  Harmoni

Int'l Spice, Inc., 211 F.Supp.3d at 1307 (citing Doran v. Salem Inn, Inc., 422 U.S. 922,

923 (1975)).  "Price erosion, loss of goodwill, damage to reputation, and loss of

business opportunities" may also constitute irreparable harm in some circumstances.

Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012); see e.g.,

Confederación de Asociaciones Agrícolas del Estado de Sinaloa, A.C. v. United

States, 389 F.Supp.3d 1386, 1398 (Ct. Int'l Trade 2019).

The liquidation of entries, which may preclude judicial review, is an

irreparable harm.  As this Court recently explained:

> Liquidation, as the final computation of duties, will constitute
> irreparable harm unless an importer can obtain refunds or reliquidation
> because it cuts off judicial review and eliminates any chance of recovery
> of unlawful exactions. See Zenith, 710 F.2d at 810. In Zenith, the Court
> of Appeals held that liquidation of entries moots the action with respect

to those entries and constitutes irreparable harm. Id. The Court of Appeals explained that liquidation would not only involve economic harm, but also the "statutory right to obtain judicial review of the determination." Id.

In re Section 301 Cases I, 524 F. Supp. 3d at 1362–63.  In that case, this Court acknowledged that "despite the broad statutory language granting the Court authority to order whatever relief is appropriate" the Court of Appeals had cast doubt on this Court's ability to order refunds or reliquidation of goods subject to 301 tariffs. In re Section 301 Cases I, 524 F. Supp. 3d at 1365–66.

Here, although Plaintiff would suffer irreparable harm should its entries liquidate during the pendency of this action, Plaintiff fails to establish that it will suffer irreparable harm as a direct result of the collection of Section 301 Tariffs on syringes and needles.  The liquidation of Plaintiff's entries during the pendency of this action would cause irreparable harm.  See In re Section 301 Cases I, 524 F.Supp.3d 1355 at 1362–63.  The Defendant offers to "enter into a stipulation to not oppose the Court's authority to order reliquidation of entries that remain unliquidated as of the date when the Court rules on the proposed stipulation."  Def. MTD at 30–31.  Defendant indicates that it would "reserve the right" to make any arguments concerning whether the court should reorder liquidation should the Plaintiff prevail.  Id.  Defendant's offer falls short.  Suspending liquidation subject to the Defendant's willingness to stipulate to the refund of illegally paid duties should the Plaintiff prevail better preserves the status quo.  See In re Section 301 Cases I,

**PUBLIC VERSION**

524 F.Supp.3d at 1371 ("it is within the court's power to issue an injunction that requires the Government to suspend liquidation for each entry unless the Government opts to stipulate that it will refund the unlawfully collected duties for that specific entry"). The Court may, and here will, enjoin liquidation to prevent such a harm.

Plaintiff fails to demonstrate that it will suffer irreparable harm absent an injunction against imposition and collection of the duties. Despite arguing that the immediate threat of non-recoverable financial losses, the threat of business disruption, and loss of business and goodwill are all present in this case, Pl. Post-Hearing Br. at 2–4, Oct. 22, 2024, ECF No. 54, Plaintiff offers no evidence that any of these harms are imminent as a result of the Section 301 Tariffs. See generally Pl. Post-Hearing Brief. For example, Plaintiff's chief executive officer states that a "100% tariff rate would force Retractable to sell some of these syringes and needles at a loss" and "may" force it to cut overhead because it "cannot afford to pay 100% tariffs and be competitive." Shaw Decl. at ¶¶ 89, 93, 95–96, Sept. 27, 2024, ECF No. 18 ("Shaw Decl."). Plaintiff's chief financial officer also projects that it will be able to "develop a domestic manufacturing operation" in 2025, Fort Decl. ¶ 32, Sept. 27, 2024, ECF No. 20 ("Fort Decl."), that it has a strong balance sheet, and that if it were required to pay the additional tariff, it would not become insolvent in 2025. Evidentiary Hearing Transcript ("Tr.") at 36:19–24, Oct. 21, 2024, ECF No. 52. Similarly, although bankruptcy can be, but does not always constitute irreparable

harm, here Plaintiff does not allege or offer any evidence bankruptcy is certain or imminent. Tr. at 38:16–20 (discussing Plaintiff's investments)[5]. Indeed, the evidence put forth reveals Plaintiff would not become insolvent in the near future. <u>See</u> Plaintiff's 2024 Q2 Financial Statements ("DX-8") at 1, 3, October 16, 2024, ECF No. 45–5 (showing Plaintiff's cash and cash equivalents); <u>see also</u> Tr. 36:22–24 (indicating that Plaintiff has a strong balance sheet because its assets exceed its liabilities); Tr. 38:21–24 (discussing the strength of Plaintiff's balance sheet).

## III.    The Balance of Equities.

Plaintiff argues that the balance of the equities favors it over the Defendant because it will suffer irreparable harm absent an injunction, while the Defendant will "merely suffer a delay in collecting tariffs." Compl. at ¶168; Preliminary Injunction Motion at 25. The Defendant responds that Plaintiff's requested relief would "undermine the effectiveness" of the USTR's action to eliminate China's unfair trade practices. Def. MTD at 43. The Court "must balance the competing claims of injury and must consider the effect on each party" of granting or denying the relief requested. <u>Winter</u>, 555 U.S. at 24 (internal quotation marks omitted) (quoting <u>Amoco Production Co. v. Village of Gambell, AK</u>, 480 U.S. 531, 542 (1987)). The balance of the equities favors Defendant. The relief sought is not narrow. Plaintiff asks the Court to enjoin the imposition on the Section 301 Tariffs and "waive a security or

---

[5] Plaintiff testified that its investments [[
                                                   ]]

bond before entering a restraining order and injunction." Preliminary Injunction

Motion at 24, n. 4. Consequently, given the amount of Plaintiff's imports, if it were

not required to pay the 301 Tariffs on its imports during the pendency of this case,

the United States would be at risk of losing millions of dollars if Plaintiff were to lose

this case. <u>See</u> Amstutz Decl. at 2, Oct. 11, 2024, ECF No. 34.[6] This possibility,

coupled with Plaintiff's failure to show it will suffer irreparable harm absent

injunctive relief tips the balance of the equities in favor of the Defendant and against

enjoining collection of the Section 301 Tariffs.[7]

## IV. Public Interest.

Plaintiff contends that the public interest supports granting an injunction to

preserve its business and "government-funded, patented technology," as well as allow

for affordable syringes and needles, and maintain a diverse and competitive market

for essential medical supplies. Compl. at ¶ 169; Preliminary Injunction Motion at

25–26. Defendant responds that the relief requested by Plaintiff is not in the public

interest in part because of uncertainty as to whether Plaintiff could pay the duties at

the end of the case, as well as the broader implications if other companies subject to

these tariffs requested the same relief. Def. MTD at 42.

---

[6] Plaintiff has imported merchandise with an approximate value of [[                    ]]
between January 1, 2024 and October 3, 2024.

[7] Nonetheless, it would be inequitable if the liquidation of entries precluded review
of Plaintiffs claims. <u>See</u> <u>In re Section 301 Cases I</u>, 524 F. Supp. 3d at 1371, and
therefore, as already discussed, the Court will enjoin liquidation of Plaintiff's entries.

The Court pays special attention to the public consequences when deciding whether to grant injunctive relief. <u>Winter</u>, 555 U.S. at 24. Customs must protect the revenue of the United States. <u>See generally</u> <u>Carolina Tobacco Co., Inc. v. United States</u>, 402 F.3d 1345 (Fed. Cir. 2005). The United States has a legitimate interest in the imposition and collection of Section 301 duties. <u>See generally</u> <u>Section 301 Investigation Findings</u>; <u>In re Section 301 Cases I</u>, 524 F.Supp.3d 1355. Finally, Plaintiff itself argues that its financial situation in the next three to five years is precarious. Tr. at 39:12-23. Thus, protection of the United States' revenue weighs more heavily in favor of the denying an injunction regarding the collection of the Section 301 Tariffs. However, "preserving judicial review of the application of the underlying legislation fosters the public interest in the lawful application of that legislation" which weighs in favor of enjoining liquidation of Plaintiff's entries. <u>In re Section 301 Cases I</u>, 524 F.Supp.3d at 1372.

## CONCLUSION

Despite raising serious and substantial questions as to the legality of the USTR's actions in making its determination, Plaintiff fails to demonstrate that it will suffer irreparable harm should an injunction against collection of the Section 301 Tariffs not issue. Further, the balance of the equities and the public interest both weigh against issuing an injunction against the imposition and collection of the Section 301 Tariffs. Finally, the Court will eliminate irreparable harm that would

Court No. 24-00185                                                                      Page 22
**PUBLIC VERSION**

flow from the liquidation of entries that are currently unliquidated during the pendency of this suit by enjoining liquidation of Plaintiff's entries.

In light of the foregoing, it is

**ORDERED** that Plaintiff's application for temporary restraining order and motion for preliminary injunction enjoining the collection of Section 301 Tariffs, see ECF No. 5, are denied; and it is further

**ORDERED** that Plaintiff's motion for preliminary injunction, see ECF No. 5, enjoining liquidation of Plaintiff's entries during the pendency of this litigation is granted; and it is further

**ORDERED** that Defendants, together with their delegates, officers, agents, and servants, including employees of U.S. Customs and Border Protection, are enjoined during the pendency of this litigation, including any appeals, from liquidating any entry for which they receive a request for suspension of liquidation pursuant to this order, unless, within 14 calendar days from the date Defendants receive a request for suspension of liquidation of such entry, Defendants, at their option, stipulate to refund any duties found to have been illegally collected for that specific entry and notify Plaintiff of such stipulation promptly in writing.

      /s/ Claire R. Kelly
      Claire R. Kelly, Judge

Dated:      October 28, 2024
        New York, New York