## UNITED STATES COURT OF INTERNATIONAL TRADE

-------------------------------------------------------------------X

RETRACTABLE TECHNOLOGIES, INC.,

                             Plaintiff,            **Before: Claire R. Kelly, Judge**

                               v.             Civil No. 24-00185

UNITED STATES OF AMERICA; OFFICE OF THE
UNITED STATES TRADE REPRESENTATIVE;
KATHERINE TAI TRADE REPRESENTATIVE;
UNITED STATES CUSTOMS & BORDER
PROTECTION; TROY MILLER, in his capacity as
Senior Official Performing the Duties of
Commissioner, U.S. Customs & Border Protection,

                            Defendants.

-------------------------------------------------------------------X

## PLAINTIFF RETRACTABLE TECHNOLOGIES, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................................... iii

PRELIMINARY STATEMENT............................................................................................................ 2

PROCEDURAL HISTORY .................................................................................................................. 2

SUMMARY OF RELEVANT ALLEGATIONS ............................................................................... 2

LEGAL STANDARD ........................................................................................................................... 7

ARGUMENT ......................................................................................................................................... 8

    I.    The Court Possesses Subject Matter Jurisdiction Over Retractable's Claims ................... 8

    II.    Retractable States a Claim for Relief............................................................................... 10
        A.    Retractable Alleges Failure to Consult and Lack of Notice ....................................... 11
        B.    Retractable Alleges Failure to Engage in Reasoned Decision Making ....................... 13

CONCLUSION .................................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Alabama Aircraft Indus., Inc. v. United States*, 586 F.3d 1372 (Fed. Cir. 2009)........................... 14

*Amoco Oil Co. v. United States*, 234 F.3d 1374 (Fed. Cir. 2000)............................................. 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................. 10

*Gilda Indus. v. United States*, 33 C.I.T. 751, 758 (C.I.T. 2009) ............................................ 11

*In Re Section 301 Cases II*, 570 F.Supp.3d at 1323–26, 1335–37 (Ct. Int'l Trade 2022)................... 8, 10

*Retractable Techs., Inc. v. United States*, Slip Op. 2024-120 (Ct. Int'l Trade Oct. 28, 2024) ...... 2, 8, 10, 11

*Transpacific Steel LLC v. United States*, 415 F. Supp. 3d 1267 (Ct. Int'l Trade 2019) ....................... 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................. 7

*H & H Wholesale Servs., Inc. v. United States*, 30 CIT ....................................................... 7

**STATUTES**

19 U.S.C. § 2412(b) ............................................................................................ 3

19 U.S.C. § 2417(a)(1) ......................................................................................... 9

19 U.S.C. §2417(a)(2) ...................................................................................... 11, 12

5 U.S.C. § 553 ............................................................................................... 10

Administrative Procedure Act ..................................................................................... 2

**OTHER AUTHORITIES**

H.R. Rep. No. 100-576 at 551 ................................................................................... 9

May 14 Presidential Directive, 89 Fed. Reg. 44,541 (May 14, 2024) ........................................... 13

May 28 Request for Comment, 89 Fed. Reg. 46,252 (May 28, 2024) .............................................. 14

**RULES**

28 U.S.C. §§ 1581(i)(2), (4) ................................................................................. 8, 10

C.I.T. Rule 7(d) ............................................................................................... 2

Rule 12(b)(6) ................................................................................................. 7

Rule 12(b)(1) ................................................................................................. 7

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Article 1, § 8, Cl. 1 ............................................................................. 10

## PRELIMINARY STATEMENT

Retractable Technologies, Inc. ("Retractable") hereby opposes Defendants' (the "Government") motion to dismiss its claims. [Dkt. 39]. The Government advances two flawed contentions, neither of which support dismissal. First, the Government says this Court lacks subject matter jurisdiction to review the United States Trade Representative's ("USTR") action taken pursuant to a Presidential directive. This Court has rejected identical contentions in indistinguishable cases, and it should do so here. Next, the Government claims Retractable does not allege failure to consult with domestic industry representatives, or an Administrative Procedure Act ("APA") claim. This Court already held that Retractable's allegations raise "a serious and substantial question" concerning consultation. *Retractable Techs., Inc. v. United States*, Slip Op. 2024-120, 13 (Ct. Int'l Trade Oct. 28, 2024). This is law of the case. Further, Retractable's allegations support the inference that USTR failed to consult or engage in reasoned decision making. The Court should deny the Government's motion.

## PROCEDURAL HISTORY

On September 26, 2024, Retractable filed a Complaint and Motion for Temporary Restraining Order and Preliminary Injunction with supporting papers. The Government filed a combined opposition to the injunction and motion to dismiss on October 15, 2024. [Dkt. 39, superseding filing at Dkt. 33]. Retractable timely submits this opposition to the Government's motion to dismiss. *See*, Court of International Trade Rule ("Rule") 7(d) (specifying thirty-five days to respond to a dispositive motion).

## SUMMARY OF RELEVANT ALLEGATIONS

Retractable summarizes the relevant allegations of its Complaint below.

Retractable Technologies, Inc. was founded in 1997 and is a small company based in Little Elm, Texas. Complaint ("Compl.") at ¶¶ 18, 29, 37, 39. It struggled to survive in a market dominated by Becton Dickinson & Company, a monopolist in the syringe and needle industry. *Id.* at ¶¶ 5, 42, 45, 51, 53. Retractable was forced to partner with Chinese manufacturers to produce its syringes and needles and stave off bankruptcy. *Id.* at ¶¶ 54–56. It has also received funds through the settlement of antitrust lawsuits against BD and related parties. *Id.* ¶¶ 46-49; Retractable continues to rely on syringe and needle production in China for its day-to-day operations, and that relationship ensures Retractable production lines in the United States are always ready to respond to any public health emergency. *Id*. at ¶¶ 4, 8, 54.

On August 14, 2017, the President of the United States directed the USTR to determine whether it should initiate an investigation under Section 302(b) of the Trade Act of 1974 (as amended 19 U.S.C. § 2412(b)) into China's practices relating to intellectual property, innovation, and technology. *Id.* at 61.[1] On August 18, 2017, the USTR formally initiated an investigation to determine whether "acts, policies, and practices" of the Chinese government related to "technology transfer, intellectual property, and innovation" were actionable under the Trade Act of 1974. Compl. ¶ 64.[2] On April 3, 2018, the USTR announced a proposed list of products for imposition of an additional duty of 25 percent and sought comments from interested parties.[3] In response, Retractable submitted comments opposing tariffs on syringes and needles. *Id*. ¶¶ 69–70. On June

---

[1] Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology, 82 Fed. Reg. 39,007 (Aug. 14, 2017).

[2] Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

[3] See generally OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation (Apr. 3, 2018) ("April 2018 Notice").

15, 2018, the USTR released its list of products subject to additional tariffs under the Section 301 action against China: this did not include additional tariffs on syringes and needles under HTSUS items 9018.31.00 and 9018.32.00.[4]  *Id*. at ¶¶ 67, 73.

On May 5, 2022, the USTR initiated a review of the Section 301 actions, *inter alia*, allowing for representatives of domestic industries which benefit from the trade actions to submit requests for continuation of the actions.[5]  Compl. at ¶ 85.  This notice only sought comments from parties "that benefit" from existing tariffs.  *Id*. at ¶ 90.  Notably, there was then no tariff on syringes and needles.  *Id*. at ¶¶ 89, 91.  Thus, the notice did not seek comment from the domestic syringe and needle industry or any representative thereof.  *Id*. at ¶ 88–91.  On September 8, 2022, the USTR announced that the Section 301 actions would not terminate and would remain in effect, "subject to possible further modifications, including any modifications resulting from the statutory four-year review.[6]  *Id*. at ¶ 90, 92.

On October 17, 2022, the USTR sought public comments "on the effectiveness of the actions in achieving the objectives of the investigation, other actions that could be taken, and the effects of such action on the United States, including consumers" and "the effects of the actions on U.S. supply chain resilience."[7]  *Id*. at ¶ 94.  Of the nearly 1,500 comments that the USTR

---

[4] See Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 83 Fed. Reg. 28,710 (Jun. 15, 2018).
[5] See Initiation of Four-Year Review Process: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 87 Fed. Reg 26,797 (May 5, 2022).
[6] Continuation of Actions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 87 Fed. Reg. 55,073-01 (Sept. 8, 2022).
[7] Request for Comments in Four-Year Review of Actions Taken in the Section 301 Investigation: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation ("October 17 Request for Comment"), 87 Fed. Reg. 62,914-02 (Oct. 17, 2022).

received, none referenced syringes or needles. *Id.* at ¶¶ 98–99.  An interagency Section 301 Committee then deliberated during the entirety of 2023 and early 2024.  *Id*. at ¶¶ 100-101.

During this time, BD's Chief Executive Officer spoke with the Secretary of Commerce at the Department of Commerce and the White House National Economic Council to drum up support for a syringe and needle tariff.  *Id.* at ¶ 102.  BD's CEO has close ties to the Secretary of Commerce and worked with the Secretary during the COVID-19 pandemic to procure microchips for machines and tools for BD production lines for various medical devices.  *Id.* at ¶ 103.  He serves on the Secretary's Advisory Committee on Supply Chain Competitiveness, where he spoke about the need for government action for syringes and needles at an August 2023 meeting.  *Id.* at ¶ 104. BD's CEO all but confirmed discussions with the Secretary of Commerce in a 2024 televised interview with Jim Cramer while discussing the effect of higher prices for domestically manufactured medical devices.  *Id.* at ¶ 106.  At the same time, BD's CEO had also been having conversations with the National Economic Council Special Assistant to the President for Manufacturing & Industrial Policy about actions the Government could take to support the domestic supply chain for drug delivery devices.  *Id.* at ¶ 105.

On March 7, 2024, the USTR requested comment on objectives and strategies to advance United States Supply chain resilience, specifically requesting comment on "examples of trade and investment policy tools that potentially could be deployed in the following sectors to enhance supply chain resilience."[8]  *Id.* at ¶ 107.  This Supply Chain Notice was independent of the Section 301 docket.  *Id.* at ¶¶ 108-109.  BD submitted comments to this Supply Chain Notice concerning

---

[8] Request for Comments on Promoting Supply Chain Resilience, 89 Fed. Reg. 16,608-02 (Mar. 7, 2024) ("Supply Chain Notice").

imposition of additional tariffs on syringes and needles[9] and a BD consultant gave hearing testimony alleging that Chinese syringes are "substandard."[10]  *Id.* at ¶¶ 110–111.  Notably, the Antitrust Division of the United States Department of Justice commented: "Any proposal to increase supply chain resilience that would result in increased consolidation in an industry that already is highly concentrated therefore should be viewed with skepticism."[11] *Id*. at ¶ 113.

On May 14, 2024, the USTR submitted a 193-page report to the President recommending the continuation of the Section 301 action and proposing new tariffs; it included a single conclusory sentence on syringes and needles: "increasing section 301 duties on syringes and needles, which are critical to U.S. preparedness and response to public health emergencies, will help maintain alternative sources."[12]  *Id*. at ¶¶ 114-117.  That same day, the President issued a memorandum directing the USTR to increase the rate of duty on syringes and needles to no less than 50 percent in 2024.[13]  *Id*. at ¶¶ 118-119, 122.  On May 28, 2024, the USTR invited public comments on the tariffs relating to "facemasks, medical gloves, syringes and needles."  However, the USTR limited that invitation to comments on whether the tariff rates should be higher than the

---

[9] Comment Letter from Elizabeth Woody, Senior Vice President, Public Affairs, BD, to Juan Millán, Acting Gen. Counsel, and Victor Ban, Assistant Gen. Counsel, Off. of the U.S. Trade Representative, Re: Comments on Promoting Supply Chain Resilience [Docket Number USTR-2024-0002] (Apr. 22, 2024) (urging "USTR to leverage section 301 and other trade measures to protect our national security and public health in areas.")

[10] This testimony was given by a representative from the Coalition for a Prosperous America (a BD consultant) at a May 2, 2024 USTR hearing on supply chain resilience.

[11] Comment of the Antitrust Div., U.S. Dep't of Just. on Promoting Supply Chain Resilience [Comment ID USTR-2024-0002-0152] (Apr. 22, 2024).

[12] OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Four-Year Review of Actions Taken In The Section 301 Investigation: China's Acts, Policies, And Practices Related To Technology Transfer, Intellectual Property, And Innovation, at 86 (May 14, 2024) ("Four-Year Report").

[13] Actions by the United States Related to the Statutory 4-Year Review of the Section 301 Investigation of China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation ("May 14 Presidential Directive"), 89 Fed. Reg. 44,541 (May 14, 2024).

proposed rates.[14]  *Id*. at ¶ 131.  This notice did not seek comments from anyone except those who believed tariff rates should be at least 50%; it explicitly did not solicit general comments from domestic industry representatives who may have advocated for a lower or zero rate.  *Id*. at ¶ 130-131.  BD submitted comments urging the maximum tariff possible.  *Id*. at ¶ 136.  Despite USTR's restriction regarding comments, Retractable submitted comments explaining that the "fifty percent tariff would devastate" it.  *Id*. at ¶¶ 134–135.  However, by the time of Retractable's submissions (on June 4, concerning "supply chain resilience" and on June 28, concerning the tariff), the issue was already foreclosed.  *Id*. at ¶ 132, 134, 137.

On September 18, 2024, USTR imposed a one hundred percent tariff on syringes and needles to take effect in nine days, on September 27, 2024.[15]  *Id*. at ¶ 138.  Plaintiff commenced this action on September 26, 2024.

## **LEGAL STANDARD**

The Government raises two supposed grounds for dismissal under Rules 12(b)(1) for lack of subject matter jurisdiction, and 12(b)(6) for failure to state a claim.

The Government's motion to dismiss for lack of subject matter jurisdiction, "challenges the sufficiency of the pleadings" but does not "controvert[] the factual allegations made in the pleadings."  *H & H Wholesale Servs., Inc. v. United States*, 30 CIT 689, 691, 437 F. Supp. 2d 1335, 1339 (2006).  Therefore, the Court should assume that the allegations within the complaint are true.  *Id.*  On a motion to dismiss for failure to state a claim, "any factual allegations in the complaint are assumed to be true and all inferences are drawn in favor of the plaintiff."  *Amoco*

---

[14] Request for Comments on Proposed Modifications and Machinery Exclusion Process in Four-Year Review of Actions Taken in the Section 301 Investigation: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation ("May 28 Request for Comment"), 89 Fed. Reg. 46,252 (May 28, 2024).
[15] September 18 Modification Notice, 89 Fed. Reg. 76,581-02 (Sept. 18, 2024) ("301 Tariffs").

*Oil Co. v. United States*, 234 F.3d 1374, 1376 (Fed. Cir. 2000); Rule 12(b)(6). A Court should deny a motion to dismiss if, after assuming "that *all* the allegations in the complaint are true (even if doubtful in fact)," these allegations do not "raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citations omitted) (emphasis supplied). Thus, the Court should assume the Complaint's allegations are true as to each prong of the Government's motion.

The Court should deny the Government's motion pursuant to these controlling standards.

## ARGUMENT

### I.      The Court Possesses Subject Matter Jurisdiction Over Retractable's Claims

This Court has "exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for" the "administration and enforcement" of "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. §§ 1581(i)(2), (4). Here, Retractable challenges the imposition of Section 301 tariffs purportedly imposed in response to acts of the People's Republic of China, *i.e.*, for "reasons other than the raising of revenue." Nonetheless, the Government argues that the USTR's determination is unreviewable. It contends Retractable's declaratory judgment claim is non-justiciable as it implicates a Presidential directive not subject to the APA and/or within the APA's foreign affairs exemption to review. [Dkt. 39 at 16]. The Government misreads controlling precedent and its contention falls short.

In its decision partially granting Retractable's motion for preliminary injunction, this Court noted that it "has recently ruled under similar circumstances that the USTR's Section 301 determination is both reviewable and not subject to the APA's foreign affairs exemption."

*Retractable Techs., Inc. v. United States*, Slip Op. 2024-120, 14 (Ct. Int'l Trade Oct. 28, 2024), citing *In Re Section 301 Cases II*, 570 F.Supp.3d at 1323–26, 1335–37 (Ct. Int'l Trade 2022). In the *In Re Section 301 Cases II* decision, this Court squarely considered "whether agency action taken in accordance with presidential direction pursuant to section 307 constitutes non-reviewable presidential action." *Id.* at 1323. The Court held "the answer to that question is 'no.'" *Id.* There, the Court explained that the "bar on judicial review generally is limited to those cases in which the President has final constitutional or statutory responsibility for the *final step* necessary for the agency action directly to affect the parties." *Id.* (internal quotations omitted). The Court further explained that Congress delegated to the USTR authority over modifications to section 301 actions. *See* 19 U.S.C. § 2417(a)(1); H.R. Rep. No. 100-576 at 551 (recognizing the USTR's authority to decide and implement section 301 actions and noting that "[t]he President would not retain separate authority to take action"). *Id*. Thus, the Court held the 307 modification reviewable under the APA, even though the President directed the USTR to take action.

That case is indistinguishable from Retractable's claim here. Retractable explicitly alleges that the President's directive was *not* a final step necessary for the agency action. On May 14, 2024, President Biden directed the USTR to impose tariffs "no less than "50 percent in 2024" for syringes and needles. Compl. ¶¶ 119, 122. On September 13, 2024, the USTR issued a press release announcing a one hundred percent tariff on syringes and needles, effective within two weeks of the announcement. Compl. ¶ 138. On September 18, 2024, the USTR imposed the tariff, effective September 27, 2024. Compl. ¶ 138. The USTR took this action independently: the Presidential directive did not require that the USTR impose a one hundred percent tariff or require the tariff become effective on September 27, 2024. Instead, the President gave the USTR discretion over amount and timing of the tariff, which the USTR exercised in taking action.

Moreover, Retractable alleges that the USTR exercised discretion concerning the amount and timing of the tariff when it took actions *inconsistent* with the Presidential directive. This directive did not include exemptions for any categories of syringes and needles. [*See generally* Dkt. 9-7]. Despite that, the USTR granted an exemption from the tariff for enteral syringes and needles. Compl. ¶ 19. This action was inconsistent with the President's directive and shows the USTR acted independent of the President in imposing Section 307 modifications.

For the same reason, the Government's arguments regarding a foreign affairs exemption fail. "When invoked, the exemption will be construed narrowly and granted reluctantly." *In re Section 301 Cases II*, 570 F. Supp. 3d at 1335 (internal quotations omitted). Notably, "the foreign affairs exemption is intended to allow an agency to dispense with the notice-and-comment procedures" of 5 U.S.C. § 553. *Id.* (internal quotations omitted). Here, "the USTR did not invoke the foreign affairs exemption to relieve the agency from any rulemaking procedures that may apply in addition to the requirements of section 307." *Id.* Instead, the USTR attempted to engage in required Section 307 notice and comment, thereby acting as an agency under the APA. Moreover, as in the *In re Section 301 Cases II*, the Government presents no argument that the USTR's action has "definitely undesirable international consequences," completely undercutting its assertion of a foreign affairs exemption. *Id.* Thus, Retractable alleges a reviewable final decision by an agency under the APA and 28 USC 1581(i), and this Court should deny the Government's motion.

## II.    Retractable States a Claim for Relief

A Court should deny a motion to dismiss a claim that has "facial plausibility," i.e. "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, the Court already held that Retractable has raised "serious and substantial questions" as to whether the USTR

engaged in sufficient comment and consultation and whether the USTR's agency actions were arbitrary and capricious. *Retractable Techs., Inc. v. United States*, Slip Op. 2024-120, 10 (Ct. Int'l Trade Oct. 28, 2024). Nonetheless, the Government contends that Retractable fails to state a claim concerning USTR's failure to consult with industry representatives or comply with the APA.

The Constitution places the power to impose duties on imported products firmly in the Congress. U.S. Const. Article 1, § 8, Cl. 1. When the Executive Branch imposes duties, it may do so only within the limited scope of authority Congress has delegated to it. With respect to the analogous delegation of authority under Section 232, this Court has observed: "Although the statute grants the President great discretion in deciding what action to take, it cabins the President's power both substantively, by requiring the action to eliminate threats to national security caused by imports, and procedurally, by setting the time in which to act.**" *Transpacific Steel LLC v. United States*, 415 F. Supp. 3d 1267, 1274 (Ct. Int'l Trade 2019). As demonstrated below, Retractable has adequately alleged that the USTR failed to follow the procedural mandates relating to consultation, notice, and reasoned decision making.

### A. Retractable Alleges Failure to Consult and Lack of Notice

Section 317(a)(2) of the Trade Act expressly requires that USTR "consult with . . . representatives of the domestic industry concerned" before modifying or terminating any action under Section 301. 19 U.S.C. §2417(a)(2). This Court has previously recognized that "some of the USTR's actions are contingent upon an *actual consultation* with the domestic industry." *Gilda Indus. v. United States*, 33 C.I.T. 751, 758 (C.I.T. 2009) (emphasis supplied). It has held that this consultation "entails, at the *very least*, notice." *Id.* (emphasis supplied). Here, Retractable alleges facts from which the Court can (and should) draw the inference that USTR did not consult with industry representatives.

Retractable alleges that the "USTR did not consult with Retractable or even provide it with adequate notice prior to advising the President to impose a needle and syringe tariff."  Compl. ¶ 129.  The USTR submitted a recommendation to the President to impose a tariff on syringes and needles on May 14, 2024, before seeking comments related to syringes and needles on May 28, 2024.  *Retractable Techs., Inc. v. United States*, Slip Op. 2024-120, 14 (Ct. Int'l Trade Oct. 28, 2024).  Similarly, Retractable alleges that "by the time Retractable had notice and could submit comments, USTR had already limited its inquiry to whether a tariff should exceed fifty percent." *Id*. ¶ 130.  These allegations support Retractable's claims that USTR failed to engage in statutorily required consultation with domestic industry representatives or provide Retractable adequate notice.

Nonetheless, the Government faults Retractable for supposedly not alleging that USTR failed to consult with any domestic industry representatives.  Setting aside that Retractable does not yet have access to the agency record, including USTR's communications with third parties, Retractable plainly alleges that USTR did not seek comment from it *or* from representatives of the domestic industry before making a recommendation to the President, and thereafter limited comments to those seeking even higher duties on syringes and needles.  This Court can and should draw the inference from these allegations that Retractable more than adequately alleges the USTR did not meaningfully consult with domestic industry representatives.  At best, the Government raises contentions best resolved after a review of the administrative record.  These contentions do not support granting a pre-answer motion to dismiss.

The Government argues that Retractable is misreading § 2417(a)(2) to require that the USTR consult with it and with every member of the domestic industry.  [Dkt. 39 at 22].  That is not what Retractable claims.  Retractable alleges that *in addition* to failing to consult with

Retractable, the USTR expressly limited the scope of comments it would receive from the domestic industry.  Initially, the USTR solicited comments only from those who benefited from the trade action, which did not include any representatives of the domestic needle and syringe industry. [Dkt. 9-2 at 2].  On its face, that limitation discouraged comments from an unknown number of importers, hospitals, pharmacies, other institutions (e.g., correctional health care, nursing homes, and medical schools), and individual patients who did not benefit from the imposition of Section 301 duties on syringes and needles.  The USTR's subsequent request for public comments was limited to only those "other interested parties" who would advocate for a tariff that is higher than the 50% level set by the President.  Even by the Government's suggested standard, this limited opportunity for consultation does not satisfy the requirement that the USTR hear the views of "a typical or characteristic example of a particular group . . . ." [Dkt. 39 at 22].  Cherry picking the views of favored domestic producers is not consultation with the representatives of the domestic industry.

### B.  Retractable Alleges Failure to Engage in Reasoned Decision Making

Retractable also alleges that the USTR failed to engage in reasoned decision making, as required by the APA.  Retractable alleges that "USTR received nearly 1,500 comments" in response to its October 2022 notice, but "none of the comments referenced syringes or needles, or sought a tariff on syringes or needles." Compl. ¶¶ 98-99.  Retractable alleges the only discussion of syringes emerged through "an unrelated inquiry concerning domestic supply chain issues." *Id*. ¶ 145; *see also,* ¶¶ 107–111 (alleging that the syringe and needle tariff idea arose in an unrelated domestic supply chain inquiry).  Similarly, Retractable alleges that "USTR did not undertake an analysis of any Section 301 factors in connection with the proposed syringe and needle tariff." Compl. ¶ 125.

Retractable also alleges that USTR's "Report to the President discusses Chinese trade policies and other Section 301 factors as to all other categories of new tariffs," but excludes any such analysis for "syringes and needles." Id. ¶ 126.  Retractable further alleges that the USTR's decision "does not appear to be based on its inquiry into Chinese practices related to intellectual property transfer," and instead "purely arises out of domestic supply concerns." Compl. ¶¶ 143-144.  As noted above, Retractable alleges that USTR recommended a syringe and needle tariff prior to seeking comments on that topic except with respect to the unrelated docket on supply chain resiliency.  *See* May 14 Presidential Directive, 89 Fed. Reg. 44,541 (May 14, 2024); May 28 Request for Comment, 89 Fed. Reg. 46,252 (May 28, 2024).  Retractable also alleges that USTR's notice limited comments to those seeking a higher than fifty percent tariff on syringes and needles, improperly excluding relevant comments.  *See* Compl. ¶¶ 15, 130, 191.  These allegations state a claim that USTR failed to engage in reasoned decision making, *e.g.*, by "fail[ing] to consider an important aspect of the problem . . . ." *Alabama Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009).

Nonetheless, the Government contends that Retractable fails to state a claim and cites instances in the agency record purportedly showing that the USTR considered comments about increasing "duties on health care goods."  [Dkt. 39 at 40].  The Government's contentions ignore Retractable's allegations that USTR did not engage with the comments regarding syringes and needles, including Retractable's comments, Medline's comments, American Hospital Association's comments, and even comments made by the Antitrust Division of the Department of Justice.  These allegations that USTR failed to engage meaningfully and respond adequately to the information presented state a claim under the APA.  The Court should deny the motion.

## **CONCLUSION**

For the foregoing reasons, Retractable respectfully requests that the Court deny the Government's motion to dismiss in its entirety and grant such other and further relief as it deems just and proper.

Dated: November 19, 2024
      New York, New York

Respectfully submitted,

**ROMANO LAW PLLC**

By: /s/Siddartha Rao
    Siddartha Rao
    Danielle Yurkew
    Curtis Fuller
One Battery Park Plaza, 7th Floor
New York, NY 10004
Phone: (212) 865-9848
Email: sid@romanolaw.com
      danielle@romanolaw.com
      curtis@romanolaw.com

*Counsel for Plaintiff*
*Retractable Technologies, Inc*

**BARNES, RICHARDSON & COLBURN LLP**

By: /s/Lawrence Friedman
    Lawrence M. Friedman
303 East Wacker Drive Ste. 305
Chicago, IL 60601
Phone: (312) 565 1782
Email: lfriedman@barnesrichardson.com

*Local Counsel for Plaintiff*
*Retractable Technologies, Inc.*

<u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this response brief complies with the word limitation of the U.S. Court of International Trade Standard Chambers Procedure 2(B)(1). The brief contains 4,255 words, excluding the caption, table of contents, table of authorities, certificates of counsel, and signature blocks.

Dated: November 19, 2024

Respectfully submitted,
<u>*/s/Curtis Fuller*</u>
Curtis Fuller
