**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| RETRACTABLE TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA; OFFICE ) | Court No. 24-00185 |
| OF THE UNITED STATES TRADE ) | |
| REPRESENTATIVE; KATHERINE TAI ) | |
| TRADE REPRESENTATIVE; UNITED ) | |
| STATES CUSTOMS & BORDER ) | |
| PROTECTION; TROY MILLER, in his ) | |
| capacity as Senior Official Performing the ) | |
| Duties of Commissioner, U.S. Customs & ) | |
| Border Protection, ) | |
| ) | |
| Defendants. ) | |

## <u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>

OF COUNSEL

MEGAN M. GRIMBALL
PHILIP A. BUTLER
Associate General Counsel
Office of the United States Trade
Representative

EMMA L. TINER
Attorney
International Trade Litigation
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

December 10, 2024

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

EMMA E. BOND
Senior Trial Counsel
U.S. Department of Justice, Civil Division
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-2034
Email: Emma.E.Bond@usdoj.gov

*Attorneys for Defendants*

## TABLE OF CONTENTS

**PAGES**

INTRODUCTION ................................................................................................................1

DISCUSSION .....................................................................................................................2

I.    The Court Lacks Jurisdiction To Entertain An APA Challenge To The President's
      Direction ...............................................................................................................2

II.   The Remaining Claims In Retractable's Complaint Fail To State A Claim For
      Relief....................................................................................................................6

      A.    Retractable Fails To State An APA Claim Challenging The Trade
            Representative's Implementation Of The President's Direction................6

            i.    The Foreign Affairs Exemption Applies .........................................7

            ii.   The Complaint Makes No Plausible Allegation That The Trade
                  Representative Failed To Provide A Reasoned Basis For Its
                  Implementation Of The President's Direction................................9

      B.    Retractable Fails To Plausibly Allege That The Trade Representative Did
            Not Consult With Representatives Of The Domestic Industry, As
            Required By 19 U.S.C. § 2417(a)(2).......................................................12

            i.    Law Of The Case Does Not Prevent Dismissal............................12

            ii.   Retractable Concedes That The Statute Does Not Require
                  Consultation With Every Member Of The Domestic Industry
                  Concerned ...................................................................................14

            iii.  Retractable's New Allegations Do Not Appear In The Complaint
                  And It Would Be Futile To Allow Amendment ...........................15

CONCLUSION....................................................................................................................20

## TABLE OF AUTHORITIES

**CASES**                                                                         **PAGES**

*Am. Ass'n of Exps. & Imps. v. United States*,
    751 F.2d 1239 (Fed. Cir. 1985) ............................................................... 7, 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................ 16

*Bell A. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................ 16

*City of New York v. Perm. Mission of India to U.N.*,
    618 F.3d 172 (2d Cir. 2010) ................................................................... 8

*Corus Grp. PLC. v. Int'l Trade Comm'n*,
    352 F.3d 1351 (Fed. Cir. 2003) .......................................................... 4, 10

*Dalton v. Specter*,
    511 U.S. 462 (1994) ......................................................................... 4, 10

*FCC v. Schreiber*,
    381 U.S. 279 (1965) ............................................................................ 20

*Foman v. Davis*,
    371 U.S. 178 (1962) ............................................................................ 16

*Ford Motor Co. v. United States*,
    896 F. Supp. 1224 (Ct. Int'l Trade 1995) ............................................... 16

*Ford Motor Co. v. United States*,
    992 F. Supp. 2d 1346 (Ct. Int'l Trade 2014) ........................................... 14

*Ford Motor Co. v. United States*,
    811 F.3d 1371 (Fed. Cir. 2016) ............................................................ 14

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ......................................................................... 2, 4

*Gould, Inc. v. United States*,
    67 F.3d 925 (Fed. Cir. 1995) ............................................................... 13

*Hudson v. Principi*,
    260 F.3d 1357 (Fed. Cir. 2001) ............................................................ 14

*In re Sec. 301 Cases I,*
   524 F. Supp. 3d 1355 (Ct. Int'l Trade 2021) ................................................................ 1

*In re Sec. 301 Cases II,*
   570 F. Supp. 3d 1306 (Ct. Int'l Trade 2022) .................................................. 1, 2, 3, 7, 8

*In re Sec. 301 Cases III,*
   628 F. Supp. 3d 1235 (Ct. Int'l Trade 2023) .......................................................... 1, 3, 9

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ................................................................................................... 16

*Michael Simon Design, Inc. v. United States*,
   609 F.3d 1335 (Fed. Cir. 2010) .......................................................................... 2, 4, 5

*Norcal/Crosetti Foods, Inc. v. United States*,
   963 F.2d 356 (Fed. Cir. 1992) ..................................................................................... 5

*Perkin–Elmer Corp. v. Computervision Corp,*
   732 F.2d 888 (Fed. Cir. 1984) ................................................................................... 13

*Retractable Techs., Inc. v. United States*,
   2024-120, 13 (Ct. Int'l Trade Oct. 28, 2024) ............................................................ 13

*Rocky Mountain Helium, LLC v. United States*,
   841 F.3d 1320 (Fed. Cir. 2016) ................................................................................... 6

*Sherley v. Sebelius,*
   689 F.3d 776 (D.C. Cir. 2012) .................................................................................. 14

*Suel v. Sec. of Health & Human Services*,
   192 F.3d 981 (Fed. Cir. 1999) ................................................................................... 13

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
   435 U.S. 519 (1978) ................................................................................................... 20

**<u>STATUTES</u>**

5 U.S.C. § 551 ...................................................................................................... 1, 3, 4

5 U.S.C. § 553 .............................................................................................. 1, 3, 6, 7, 8

19 U.S.C. § 2155 ............................................................................................. 16, 17, 20

19 U.S.C. § 2411 ....................................................................................................... 1, 8

19 U.S.C. § 2411(b) ...................................................................................................... 11

19 U.S.C. § 2411(c)(3) .................................................................................................. 11

19 U.S.C. § 2413(a)(3) ........................................................................................... 16, 17

19 U.S.C. § 2415(a)(2) ................................................................................................ 17

19 U.S.C. § 2416(b) .................................................................................................... 17

19 U.S.C. § 2416(d)(1) ............................................................................................... 17

19 U.S.C. § 2417 ........................................................................................................... 1

19 U.S.C. § 2417(a)(2) ...................................................................... 2, 3, 4, 15, 17, 19

19 U.S.C. § 2417(c)(1) ................................................................................................ 18

28 U.S.C. 1581(i) ......................................................................................................... 5

## RULES

USCIT 12(b)(1) ..................................................................................................... 1, 20

USCIT 12(b)(1) ......................................................................................................... 20

## ADMINISTRATIVE DETERMINATIONS

*Notice of Continuation and Request for Nominations for the Industry Trade Advisory Committees,*
    83 Fed. Reg. 21,813 (U.S. Trade Representative, May 10, 2018) ................................... 17

*Continuation of Actions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,*
    87 Fed. Reg. 55,073 (U.S. Trade Representative, Sept. 8, 2022) ...................................... 6

*Request for Comments in Four-Year Review of Actions Taken in the Section 301 Investigation: China's Acts, Policies, and Practices Related to Technology    Transfer, Intellectual Property, and Innovation,*
    87 Fed. Reg. 62,914 (U.S. Trade Representative, Oct. 17, 2022) ..................................... 6

*Request for Comments on Proposed Modifications and Machinery Exclusion Process in Four-Year Review of Actions Taken in the Section 301 Investigation: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,*
    89 Fed. Reg. 46,252 (U.S. Trade Representative, May 28, 2024) ..................................... 6

*Notice of Modification: China's Acts, Policies and Practices Related to Technology Transfer, Intellectual Property and Innovation,*
    89 Fed. Reg. 76,581 (U.S. Trade Representative, Sept. 18, 2024) .................................. 17

## INTRODUCTION

Retractable's complaint should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of this Court's rules.  USCIT 12(b)(1), (6).

Retractable raises three primary challenges to the United States Trade Representative's imposition of 100 percent duties on needles and syringes pursuant to sections 301 and 307 of the Trade Act of 1974 (Trade Act), codified at 19 U.S.C. §§ 2411, 2417.  First, Retractable alleges a violation of the Administrative Procedure Act (APA) rulemaking procedures, 5 U.S.C. §§ 551-553, based on the Trade Representative's recommendation to the President and the President's later direction to impose a duty of at least 50 percent on needles and syringes.  Compl. ¶¶ 181, 190-193; *id.* at ¶¶ 114-131.  The Court lacks jurisdiction to entertain this claim.  *See* Mot. to Dismiss at 17-20, ECF No. 39.  In opposing dismissal, Retractable relies on the reasoning in *In re Section 301 Cases*.[1]  But there, the Court did *not* review whether the President (or recommendations considered by the President) satisfied the APA requirement for reasoned decisionmaking.  Such APA-style review of discretionary Presidential action is plainly prohibited by Supreme Court precedent.

Second, to the extent Retractable alleges an APA violation based on the Trade Representative's implementation of the Presidential direction, the claim should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).  Retractable fails to meaningfully respond to the showing that fashioning an appropriate section 301 action involves a foreign affairs function, and is thus exempt from APA rulemaking procedures.  Even if the foreign affairs exemption does

---

[1] *See In re Sec. 301 Cases*, 524 F. Supp. 3d 1355, 1358 (Ct. Int'l Trade 2021) (*In re Sec. 301 Cases I*); *In re Section 301 Cases*, 570 F. Supp. 3d 1306, 1334–35 (Ct. Int'l Trade 2022) (*In re Sec. 301 Cases II*); *In re Section 301 Cases*, 628 F. Supp. 3d 1235, 1250 (Ct. Int'l Trade 2023) (*In re Section 301 Cases III*).

not apply, Retractable offers no plausible claim that the Trade Representative failed to engage in reasoned decisionmaking when implementing the President's direction, following consideration of significant comments.

Finally, Retractable alleges that the Trade Representative did not consult with Retractable and, thus, failed to comply with the statutory requirement to consult with representatives of the domestic industry concerned. *See* Compl. ¶¶ 171-180; 19 U.S.C. § 2417(a)(2). This claim should also be dismissed pursuant to Rule 12(b)(6). Retractable concedes that the Trade Representative is not required to consult with *every* member of the domestic industry—only with "representatives" of the domestic industry. *See* Pl. Opp. at 12-13, ECF No. 71. Thus, the alleged failure to consult with a single company—Retractable—does not violate the statute. Nor does Retractable identify any other well-pleaded allegation showing the Trade Representative failed to consult with *any* representatives of the domestic industry.

## **DISCUSSION**

I.    The Court Lacks Jurisdiction To Entertain An APA Challenge To The President's Direction

The Court lacks jurisdiction to entertain an APA challenge to the President's direction to modify the existing section 301 action or to recommendations that may inform the President's exercise of discretion. *See* Mot. to Dismiss at 17-21. The President's discretionary direction is not subject to APA rulemaking review. Mot. to Dismiss at 18 (citing *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992); *Michael Simon Design, Inc. v. United States*, 609 F.3d 1335, 1340 (Fed. Cir. 2010)). None of Retractable's arguments demonstrate otherwise.

Retractable's primary response is that the Court exercised jurisdiction in the *In re Section 301 Cases*, and, thus, also possesses jurisdiction in this case. Pl. Opp. at 8-9 (citing, *e.g.*, *In Re Section 301 Cases II*, 570 F. Supp. 3d 1306, 1323–26, 1335–37 (Ct. Int'l Trade 2022)). But in

the *In re Section 301 Cases*, the Court did not review the *President's* actions for compliance with the APA rulemaking standards set forth in 5 U.S.C. §§ 551-553.  Instead, the Court reviewed the Trade Representative's action for compliance with the statutory modification criteria, 19 U.S.C. § 2417(a), *In re Section 301 Cases II*, 570 F. Supp. 3d at 1332-35, and the Trade Representative's reasoning for compliance with the standards in 5 U.S.C. § 553, *see, e.g.*, *In re Section 301 Cases III*, 628 F. Supp. 3d 1235, 1241, 1246-1250 (Ct. Int'l Trade 2023).

Indeed, far from reviewing the rationality of the President's direction pursuant to the APA, the Court recognized that "the President's specific direction, if any, is a statutory consideration for which the agency must account."  *In re Section 301 Cases III*, 628 F. Supp. 3d at 1246 (citing *In re Section 301 Cases II*, 570 F. Supp. 3d at 1339).  "The court did not order {the Trade Representative} to analyze the President's directives," *id.* at 1247 & n.17, nor did the Court analyze the President's directives itself.  Ultimately, the Court accepted the Trade Representative's reasoning "vis-à-vis the President's direction," including that "the specific direction of the President constrained the {Trade Representative's} ability to depart from that direction{.}"  *In re Section 301 Cases*, 628 F. Supp. 3d at 1247.  "Nothing more was required." *Id.*

In this case, by contrast, Retractable seeks APA review of the *President's* discretionary direction and the non-final recommendations that preceded it.  *See, e.g.*, Compl. ¶¶ 114-131, 181-194.  For example, Retractable challenges the Trade Representative's report to the President as "conclusory," Compl. ¶ 117, and alleges that imposing any tariff on needles and syringes from China would "promote a needle and syringe monopoly, harming the U.S. healthcare system and the American people," Compl. ¶ 193.  This allegation challenges the rationality of the President's discretionary direction to impose a tariff of at least 50 percent on needles and syringes.  *See*

Compl. at page 23 (alleging a "Violation of Administrative Procedure Act 5 U.S.C. § 551 et seq." on that basis).

But Supreme Court precedent is clear:  the President's discretionary decision is not subject to APA review.  Mot. to Dismiss at 18 (citing *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992); *Michael Simon Design, Inc. v. United States*, 609 F.3d 1335, 1340 (Fed. Cir. 2010)).  The Court similarly lacks jurisdiction to review an agency's non-final *recommendations* to the President when the President has complete discretion whether to take an action.  *Id.* at 20 (citing *Corus Grp. PLC. v. Int'l Trade Comm'n*, 352 F.3d 1351, 1358 (Fed. Cir. 2003); *Dalton v. Specter*, 511 U.S. 462, 469–70 (1994); *Franklin*, 505 U.S. at 797–99).

In one case, for example, the Supreme Court held that "a report to the President by the Defense Base Closure and Realignment Commission was not subject to judicial review because it merely *recommended* base closures, and the President had 'discretion to approve or disapprove the Commission's report.'"  *Corus Grp.*, 352 F.3d at 1358 (quoting *Dalton,* 511 U.S. at 469–70) (emphasis added).  In another case, similarly, the Supreme Court held that a "decennial census report was not subject to judicial review, because it carried '*no direct consequences* for the reapportionment,' and the President was 'not expressly required to adhere to the policy decisions reflected in the Secretary's report.'"  *Id.* (quoting *Franklin,* 505 U.S. at 797–99) (emphasis added).

In this case, likewise, the Trade Representative's submission of a report to the President carried no direct consequences to the section 301 action.  The President retained discretion to decide whether or not to direct modification of the existing section 301 action—and the terms of any direction he wished to impose.  *See* 19 U.S.C. § 2417(a).  The President's discretion in doing so was not constrained in any way by the Trade Representative's recommendation.  Thus, the

Court may not entertain Retractable's challenges to the Trade Representative's "proposal to impose a tariff" by submitting a "report to President Biden." *See, e.g.*, Compl. at G, ¶¶ 114-131 (capitalization altered).

In response, Retractable asserts jurisdiction by challenging the Trade Representative's *implementation* of the President's decision. *See* Pl. Opp. at 9-10. Retractable argues, for example, that "the Presidential directive did not require that the {Trade Representative} impose a one hundred percent tariff or require the tariff become effective on September 27, 2024." Pl. Opp. at 9. But we have not asserted a jurisdictional defense to the Court's review of the Trade Representative's *implementation* of the President's direction, *e.g.*, by selecting the appropriate tariff level at a rate of 50 percent or higher.[2] Instead, the defect lies in Retractable's challenge to the President's direction itself and the Trade Representative's recommendations leading up to it.

On that point, Retractable fails identify any authority for the Court to review the President's direction or the Trade Representative's non-final recommendations pursuant to the APA. *See* Pl. Opp. at 8-10 (not addressing this issue). Nor does the basis for jurisdiction in this case—28 U.S.C. § 1581(i)—create any "cause of action independent of the APA." *Michael Simons Design*, 609 F.3d at 1341 n.1 (citing, *e.g.*, *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992)). Accordingly, the Court lacks jurisdiction to entertain the complaint's allegations challenging the President's direction or the Trade Representative's recommendations preceding that direction. Compl. at ¶¶ 114-131, 190-193.

---

[2] As detailed below, however, Retractable has failed to state a claim for relief on this basis. *See* Section II(A).

II.    <u>The Remaining Claims In Retractable's Complaint Fail To State A Claim For Relief</u>

The remainder of Retractable's complaint challenges the Trade Representative's

implementation of the President's direction and consultation with representatives of the domestic

industry.  Both claims should be dismissed pursuant to Rule 12(b)(6).[3]

A.    Retractable Fails To State An APA Claim Challenging The Trade
        <u>Representative's Implementation Of The President's Direction</u>

The complaint fails to state a claim that the Trade Representative did not satisfy the APA

requirement for reasoned decisionmaking when implementing the President's direction.  When

an agency promulgates a substantive rule, the APA generally requires (among other things)

notice of the proposed rulemaking, an opportunity for public comments, and adoption of a

"concise general statement" of the rule's basis and purpose.  5 U.S.C. § 553(b), (c).  These

---

[3]  Consistent with the standard governing Rule 12(b)(6) motions, all allegations in the complaint are accepted as true and consideration is limited to "the complaint in its entirety," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (internal citations omitted).

In particular, it is appropriate for the Court to consider the following documents incorporated into the complaint by reference: **(1)** Exhibit 11, ECF No. 41-11, *Initiation of Four-Year Review Process: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 87 Fed. Reg. 26,797 (U.S. Trade Representative, May 5, 2022) (incorporated by reference in Compl. ¶¶ 88-90), **(2)** Exhibit 13, ECF No. 41-13, *Request for Comments in Four-Year Review of Actions Taken in the Section 301 Investigation: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 87 Fed. Reg. 62,914 (U.S. Trade Representative, Oct. 17, 2022) (incorporated by reference in Compl. ¶¶ 95-96), **(3)** Exhibit 15, ECF No. 41-15, Presidential Direction (May 14, 2024) (incorporated by reference in Compl. ¶¶ 118-120), **(4)** Exhibit 17, ECF No. 41-17, *Request for Comments on Proposed Modifications and Machinery Exclusion Process in Four-Year Review of Actions Taken in the Section 301 Investigation: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 89 Fed. Reg. 46,252 (U.S. Trade Representative, May 28, 2024) (incorporated by reference in Compl. ¶ 131), **(5)** Exhibit 24, ECF No. 41-24, Retractable Technologies, Inc. Comment, USTR-2024-0007-00108478 (June 28, 2024) (incorporated by reference in Compl. ¶ 134), and **(6)** Exhibit 30, ECF No. 41-30, *Notice of Modification: China's Acts, Policies and Practices Related to Technology Transfer, Intellectual Property and Innovation*, 89 Fed. Reg. 76,581 (U.S. Trade Representative September 18, 2024) (incorporated by reference in Compl. ¶ 139).

provisions do not apply, however, "to the extent that there is involved . . . *a military or foreign affairs function* of the United States." 5 U.S.C. § 553(a)(1) (emphasis added).  As discussed below, the foreign affairs exemption applies here and, even if it does not, the complaint fails to state a claim that the Trade Representative did not engage in reasoned decisionmaking.

i.    <u>The Foreign Affairs Exemption Applies</u>

Retractable presents two arguments that the foreign affairs exemption does not apply.  Pl. Opp. at 10.  Both are wrong.  *See* Mot. to Dismiss at 39.

First, relying on this Court's decision in *In re Section 301 Cases II*, Retractable contends that the Trade Representative "'did not invoke the foreign affairs exemption to relieve the agency from any rulemaking procedures,'" but instead "attempted to engage in . . . notice and comment." Pl. Opp. at 10 (quoting *In re Section 301 Cases II*, 570 F. Supp. 3d at 1335).  But the statute does not require an agency to invoke the foreign affairs exemption for the exemption to apply.  *See* 5 U.S.C. § 553(a).  Nor does the legislative history support such a limitation.  The foreign-affairs exemption was designed "to allow more cautious and sensitive consideration of those matters which 'so affect relations with other Governments that, for example, public rulemaking provisions would provoke definitely undesirable international consequences.'" *Am. Ass'n of Exps. & Imps. v. United States*, 751 F.2d 1239, 1249 (Fed. Cir. 1985) (quoting H. Rep. No. 1980, 69th Cong., 2d Sess. 23 (1946); citing S. Rep. No. 752, 69th Cong., 1st Sess. 13 (1945)).  This "cautious and sensitive" approach does not support a formulaic rule requiring incantation of magic words to invoke the exemption.

Even if invocation were required, the modification decision reflects an understanding that only section 307 procedures and procedures directed by the President governed the modification. Ex. 30 at 5-9, ECF No. 41-30; *see also* Ex. 15 at 3-4, ECF No. 41-15 (Presidential memorandum

7

directing the Trade Representative to provide notice and an opportunity for comment, but not requiring other procedures set forth in 5 U.S.C. § 553).

Second, Retractable argues that "the Government presents *no argument* that the {Trade Representative's} action has 'definitely undesirable international consequences.'"  Pl. Opp. at 10 (quoting *In re Section 301 Cases II*, 570 F. Supp. 3d at 1335) (emphasis added).  This argument ignores the discussion in the motion to dismiss demonstrating exactly that.  *See* Mot. to Dismiss at 39.

As the motion explained, "{w}hen deciding what action is 'appropriate and feasible' under section 301, the Trade Representative has discretion (subject to the President's direction) to choose among *any* action authorized under section 2411(c)—including imposing duties or 'enter{ing} into binding agreements' with the foreign country concerned."  Mot. to Dismiss at 39 (quoting 19 U.S.C. § 2411(b), (c)(1)(B), (D)).  "Subjecting such choices to APA procedures would 'provoke *definitely undesirable international consequences*.'"  *Id.* (quoting *Am. Ass'n of Exps. & Imps.*, 751 F.2d at 1249 (quoting H.R. Rep. No. 79-1980 at 257)).  Thus, the motion explained that the section 307 and 301 inquiry implicated "diplomatic functions"—which lie at the heart of the foreign affairs exemption.  *See City of New York v. Perm. Mission of India to U.N.*, 618 F.3d 172, 202 (2d Cir. 2010) (explaining that "{t}hough the foreign affairs exception extends beyond diplomacy, diplomatic functions . . . represent the exception's paradigm case").  By ignoring the Government's argument, *see* Pl. Opp. at 10, Retractable fails to rebut it.[4]

---

[4]  It suffices that definitely undesirable international consequences would flow from subjecting this *type of decision* to APA requirements.  Requiring a showing of "specific" consequences on a case-by-case basis in this area, as argued by Retractable, would risk turning the phrase "'provoke definitely undesirable international consequences' from an illustration given in the APA's legislative history . . . into the definition for 'foreign affairs function.'"  *City of New York v. Perm. Mission of India to U.N.*, 618 F.3d at 202.  Other provisions in section 553—such as the "good cause" exception—apply when the "notice and public procedure . . . are

ii.    The Complaint Makes No Plausible Allegation That The Trade Representative Failed To Provide A Reasoned Basis For Its Implementation Of The President's Direction

Even if the foreign affairs exemption does not apply, the complaint makes no plausible allegation that the Trade Representative lacked a reasoned basis for its implementation of the President's direction.

As in the *In re Section 301 Cases*, the Trade Representative's reasoning reflects its understanding that the "specific direction of the President constrained" the Trade Representative's "ability to depart from" the Presidential direction.  *See In re Section 301 Cases III*, 628 F. Supp. 3d at 1247.  The President directed modification of the existing section 301 action by increasing tariff rates "to no less than" 50 percent in 2024, Ex. 15 at 3, ECF No. 41-15, and the Trade Representative took steps to implement that direction, *see* Ex. 17 at 5-6, 31, ECF No. 41-17; Ex. 30 at 21-22, ECF No. 41-30.  The Trade Representative ultimately imposed 100 percent duties on Harmonized Tariff Schedule of the United States (HTSUS) subheadings 9018.31.00 and 9018.32.00—covering needles and syringes.  In doing so, the Trade Representative considered all "significant comments," including comments that "higher rates would help support domestic manufacturing and recommended rates as high as 100 percent." Ex. 30 at 8, 21-22, ECF No. 41-30.  Additionally, in response to "a large number of comments report{ing}a limited availability of enteral syringes outside of China" and requesting an exclusion to protect vulnerable patients, the Trade Representative "determined to exclude enteral syringes through January 1, 2026."  *Id.* at 22.

---

impracticable, unnecessary, or contrary to the public interest" based on the specific facts of the case.  5 U.S.C. § 553(b).

Even taking all well-pleaded allegations in the complaint as true, Retractable fails to state a claim that the Trade Representative's implementation of the President's direction violates the APA.  In arguing otherwise, Retractable challenges (1) the Trade Representative's non-final recommendations to the President, (2) the nexus between needles and syringes and the unfair practices at issue in the underlying section 301 investigation, and (3) the opportunity to comment on the proposed modifications.  Pl. Opp. at 13-14.  None of these allegations states a claim that the Trade Representative failed to engage in reasoned decisionmaking.

First, the majority of Retractable's arguments on this issue challenge the Trade Representative's recommendations to the President.  *See* Pl. Opp. at 13-14.  According to Retractable, the Trade Representative "*recommended* a syringe and needle tariff prior to seeking comments on that topic except with respect to the unrelated docket on supply chain resiliency." Pl. Opp. at 14 (citing May 14 Presidential Directive, 89 Fed. Reg. 44,541 (May 14, 2024); May 28 Request for Comment, 89 Fed. Reg. 46,252 (May 28, 2024)) (emphasis added); *see also id.* at 13-14 (citing Compl. ¶ 145, Compl. ¶¶ 107-111).  But other allegations in the complaint (and materials incorporated by reference) demonstrate that supply chain considerations were present throughout the four-year review.[5]  *See* Mot. to Dismiss at 8, 27 (citing, *e.g.*, Ex. 13 at 3; Compl. ¶ 81).  Regardless, even accepting Retractable's allegation as true at this posture, challenges to the Trade Representative's recommendation to the President are not reviewable.  *See* Section I. Instead, the Trade Representative's recommendation was a non-final decision that informed the President's non-reviewable exercise of discretion.  *See Corus Grp.*, 352 at 1358 (quoting *Dalton*,

---

[5]  The October 2022 notice (incorporated in the complaint) solicited comment regarding "critical supply chains" and the complaint alleges Government investment in Retractable to "enhance domestic manufacturing capacity" of needles and syringes.  Mot. to Dismiss at 8, 27 (citing, *e.g.*, Ex. 13 at 3; Compl. ¶ 81).

511 U.S. at 469–70).  The Court cannot review such non-final recommendations to the President. *See* Section I.

Second, Retractable "alleges that the {Trade Representative's} decision 'does not appear to be based on its inquiry into Chinese practices related to intellectual property transfer.'"  Pl. Opp. at 14 (quoting Compl. ¶¶ 143-144).  This allegation also fails to state a claim.  Once modification is appropriate—which Retractable does not dispute here—the statute authorizes all appropriate and feasible action to obtain the elimination of the underlying acts, policies, and practices.  *See* 19 U.S.C. § 2411(b), (c).  Such appropriate and feasible action includes duties imposed on goods from the investigated foreign country, regardless of whether the goods were involved in the underlying unfair practices.  19 U.S.C. § 2411(c)(3)(B).  Thus, as the Trade Representative explained, the statute authorizes "action against any goods or economic sector of the foreign country concerned *regardless of whether or not such goods or economic sector are involved in the act, policy, or practice subject to investigation*."  Ex. 30 at 7-8, ECF No. 41-30 (emphasis added).

Finally, "Retractable also alleges that {the Trade Representative's} notice limited comments to those seeking a higher than fifty percent tariff on syringes and needles, improperly excluding relevant comments."  Pl. Opp. at 14 (citing Compl. ¶¶ 15, 130, 191).  But considering the complaint as a whole—and all matters incorporated by reference—this allegation fails to state a claim.  The proposed modification itself shows that the Trade Representative provided an opportunity to *all* interested persons to comment on "{t}he effectiveness of" and "the effects of" the proposed modification—which included proposed duties on needles and syringes.  Ex. 17 at 5-6, ECF No. 41-17.  Retractable took this opportunity to offer comment.  *See* Compl. ¶ 134; Ex. 24, ECF No. 41-24.  Contrary to its allegation, Retractable did not limit itself to arguments

whether the tariff should be higher than 50 percent, but also argued that the proposed tariffs would place it at a disadvantage compared to competitors in the marketplace—such as Becton Dickinson and Cardinal Health.  Ex. 24 at 4, ECF No. 41-24.  Other interested parties similarly understood the broad opportunity for comment.  *See* Ex. 30 at 21-22, ECF No. 41-30 (discussing comments received during public comment period).  In sum, the Trade Representative rationally implemented the President's direction and—even accepting all well-pleaded allegations as true—Retractable fails to state a claim for violation of the APA.

B.     Retractable Fails To Plausibly Allege That The Trade Representative Did Not Consult With Representatives Of The Domestic Industry, As Required By 19 U.S.C. § 2417(a)(2)

Finally, the complaint also fails to state a claim that the Trade Representative did not consult with representatives of the domestic industry before modifying the section 301 action. Mot. to Dismiss at 21-26; Compl. ¶¶ 178-180; 19 U.S.C. § 2417(a)(2).  Before modifying an existing section 301 action, the Trade Representative must (1) engage in *consultation* with the petitioner or "representatives of the domestic industry concerned," and (2) provide an *opportunity for the presentation of views* by other interested persons affected by the proposed modification or termination.  *See* 19 U.S.C. § 2417(a).

Retractable does not contest that it had the opportunity to present its views as an interested person, but alleges that the Trade Representative failed to "consult" with Retractable. *See, e.g.*, Compl. ¶ 127; Pl. Opp. at 12.  This allegation fails to state a claim because (among other defects) the purported failure to consult with *one* company does not violate the statute. Instead, the Trade Representative is only required to consult with "*representatives* of the domestic industry concerned."  *See* 19 U.S.C. § 2417(a)(2) (emphasis added).  Retractable now

concedes this critical point, Pl. Opp. at 12-13, and Retractable's remaining arguments do not resurrect the deficiencies in the complaint.

        i.     <u>Law Of The Case Does Not Prevent Dismissal</u>

First, law of the case does not prevent dismissal.  Retractable contends that the "Court has already held that Retractable's allegations raise 'a serious and substantial question' concerning consultation," and argues "{t}his is law of the case."  Pl. Opp. at 2 (quoting *Retractable Techs., Inc. v. United States*, Slip Op. 2024-120, 13 (Ct. Int'l Trade Oct. 28, 2024)). But law of the case does not apply because the Court has not yet adjudicated the Government's arguments for dismissal pursuant to the Rule 12(b)(6) standard.

"Law of the case is a judicially created doctrine, the purpose of which is to prevent relitigation of issues that have been decided."  *Suel v. Sec. of Health & Human Services*, 192 F.3d 981, 984–85 (Fed. Cir. 1999) (citing *Gould, Inc. v. United States*, 67 F.3d 925, 927–28 (Fed. Cir. 1995)).  The doctrine's "'elementary logic is matched by elementary fairness – a litigant given one good bite at the apple should not have a second."  *Id.* (quoting *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 890 (Fed. Cir. 1984)).  Applying this rule, however, defendants have not yet had their first "good bite at the apple" pursuant to the Rule 12(b)(6) standard.  *See* USCIT 12(b)(6).  In deciding Retractable's motion for preliminary injunction, the Court recognized that "Defendant asserts defenses *upon which there will be further briefing*," including that "the Plaintiff has failed to state a claim."  Order at 7 n.2, ECF No. 62 (emphasis added).

Although the Court reasoned that "none of these defenses is so clear cut as to undermine Plaintiff's fair chance of success" for purposes of maintaining the status quo by suspending liquidation, *see id.*, the Court did not adjudicate the defenses pursuant to the applicable motion-

to-dismiss standard. *See id.* Instead, the Court ruled "solely on Plaintiff's Preliminary

Injunction Motion." *Id.* at 2. Thus, the Court has not previously decided the issues presented by

the Government's motion to dismiss, and law of the case does not apply.

Even if the Court had already decided these issues, the Court should exercise its

discretion to consider them in light of the early posture of the case. "{I}t is well-accepted' that

the application of the doctrine is within a court's discretion," and "'should not be applied

woodenly in a way inconsistent with substantial justice.'" *Ford Motor Co. v. United States*, 992

F. Supp. 2d 1346, 1355 (Ct. Int'l Trade 2014), *aff'd*, 811 F.3d 1371 (Fed. Cir. 2016) (quoting

*Hudson v. Principi,* 260 F.3d 1357, 1363–64 (Fed. Cir. 2001)) (bracketing omitted). A

preliminary injunction "is a stopgap measure, generally limited as to time, and intended to

maintain a status quo," with briefing and argument "abbreviated or eliminated by time

considerations." *See Sherley v. Sebelius*, 689 F.3d 776, 781–82 (D.C. Cir. 2012) (citations

omitted). Thus, even if the issue had already been decided (and it has not), the early posture of

the case—and the time limitations in deciding the motion for preliminary injunction—support

the Court exercising its discretion to entertain the Government's arguments for dismissal.

> ii.    Retractable Concedes That The Statute Does Not Require Consultation
>        With Every Member Of The Domestic Industry Concerned

On the merits, Retractable now concedes that the statute does not require consultation

with every member of the domestic industry concerned. *See* Mot. to Dismiss at 21-24; Pl. Opp.

at 12-13. Retractable disclaims an interpretation that would require the Trade Representative to

consult "with every member of the domestic industry," including Retractable. *See* Pl. Opp. at 12

(stating "{t}hat is not what Retractable claims"). That concession suffices to dismiss claim one,

which alleges that the Trade Representative "never consulted *Retractable* as required under

Section 307 of the Trade Act," Compl. ¶ 165 (emphasis added), and claim two, which alleges

that the Trade Representative "failed to consult with any representative of *Retractable*, a member

of the domestic industry concerned with the needle and syringe tariff," *id.* ¶ 179 (emphasis

added).  Because there is no requirement for the Trade Representative to consult with *all*

members of the domestic industry, the alleged failure to consult with one company—

Retractable—does not state a claim for relief for a statutory violation of section 307(a)(2) of the

Trade Act.  Mot. to Dismiss at 21-24.

       Retractable's concession also resolves what the Court identified as a "serious and

substantial question" regarding consultation pursuant to section 2417(a)(2).  Op. at 13, ECF No

62.  In addressing Retractable's argument that the Trade Representative "failed to consult with

it," *i.e.*, with Retractable, the Court explained that "Defendant points to the {Trade

Representative's} October 2022 and May 2024 notices as sufficient consultation."  Op. at 12-13,

ECF No. 62 (citing Mot. to Dismiss at 24).  The Court determined that "{t}here is a serious and

substantial question as to whether these two notices satisfy the requirements of 19 U.S.C. § 2417

(a)(2) in this case."  *Id.*  Again, however, Retractable now concedes that the statute does not

require consultation with "every member of the domestic industry," including Retractable.  Pl.

Opp. at 12.  Thus, the question whether the October 2022 and May 2024 notices amount to

consultation *with Retractable* is no longer a "serious" or "substantial" one—further supporting

dismissal.  As discussed below, moreover, the Trade Representative consulted with Industry

Trade Advisory Committees established pursuant to 19 U.S.C. 2155 *and* with other

representatives of the domestic industry through the notice and comment processes commenced

in October 2022 and May 2024.

       Finally, as an additional basis for dismissing claims one and two, our motion establishes

that Retractable does not qualify as a member of the domestic industry.  Mot. to Dismiss at 23-

24, ECF No. 39.  For example, Retractable alleges that it "outsource[d] its production to China," *id.* (citing Compl. ¶¶ 7, 54), and told the Trade Representative that it does "not have the equipment" to produce the relevant merchandise in the United States, *see* Ex. 24 at 4, ECF No. 41-24.  In its opposition, Retractable does not rebut these challenges or even mention them.  For this additional reason, the Court should dismiss Retractable's claims alleging violation of the consultation requirement in 19 U.S.C. § 2417(a)(2).

### iii.    Retractable's New Allegations Do Not Appear In The Complaint And It Would Be Futile To Allow Amendment

Despite retreating from its original allegations regarding the consultation requirement, Retractable now presents a new claim regarding consultation.  *See* Pl. Opp. at 12-13.  For the first time, Retractable claims that the Trade Representative violated the consultation requirement by failing to consult with representative members of the domestic industry.  Pl. Opp. at 12-13.  This new claim cannot overcome dismissal because—at this posture—the question is whether the *complaint* states a claim for relief.  "To survive a motion to dismiss, a *complaint* must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell A. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  Retractable's new claim does not appear in its complaint.

Even if Retractable had requested leave to amend its complaint pursuant to USCIT 15(a) (and it has not), amendment would be futile.  *See, e.g.*, *Ford Motor Co. v. United States*, 896 F. Supp. 1224, 1231 (Ct. Int'l Trade 1995) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  As an initial matter, Retractable lacks standing to challenge any alleged failure to consult with *other* entities.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Retractable fails to explain how such a challenge is "fairly traceable" to any alleged injury to Retractable, *id.* (citation,

bracketing, and ellipses omitted), particularly when Retractable's allegations do not support that it qualifies as a member of the domestic industry, *see* Mot. to Dismiss at 23-24; Section II.B.ii.

Further, Retractable's new theory that the Trade Representative failed to consult with "representatives" of the domestic industry does not state a plausible claim of any violation of the consultation requirement. *See* 19 U.S.C. § 2417(a)(2). Instead, materials incorporated in the complaint show that the Trade Representative satisfied the consultation requirement by consulting with "appropriate advisory committees." *See, e.g.*, Ex. 30 at 7, ECF No. 41-30; *see also* Mot. to Dismiss at 9, 22-23. Such consultation with advisory committees established pursuant to 19 U.S.C. § 2155 satisfies section 307's requirement to consult with "representatives of the domestic industry." *See* Mot. to Dismiss at 22-23 (citing, *e.g.*, 19 U.S.C. §§ 2155(a), 2413(a)(3)).

When initiating the investigation, the Trade Representative must seek information and advice from "'the petitioner'" or with "'the appropriate committees established pursuant to section 2155 of this title,' which include '*representative* elements of the private sector.'" *See* Mot. to Dismiss at 22-23 (quoting 19 U.S.C. §§ 2155(a), 2413(a)(3)) (emphasis added).[6] Section 2155 "establishes a private-sector trade advisory system to ensure that U.S. trade policy and

---

[6] Other provisions in section 301 similarly reference consultation with petitioners and representatives of the domestic industry. In addition to seeking "information and advice from the petitioner (if any) *and the appropriate committees established pursuant to section 2155 of this title* in preparing United States presentations for consultations and dispute settlement proceedings," 19 U.S.C. § 2413(a)(3) (emphasis added), the Trade Representative may, when implementing section 301 actions, delay certain actions if requested by "the petitioner" or "a majority of the *representatives of the domestic industry* that would benefit from the action." 19 U.S.C. § 2415(a)(2)(A)(i) (emphasis added). Before taking action pursuant to 19 U.S.C. §2416(b) or (c)—involving revision of actions after monitoring the implementation of each measure undertaken or agreement entered—the Trade Representative shall "consult with the petitioner, if any, involved in the initial investigation under this subchapter and *with representatives of the domestic industry concerned*." 19 U.S.C. § 2416(d)(1) (emphasis added).

trade negotiation objectives adequately reflect U.S. commercial and economic interests." *Notice*

*of Continuation and Request for Nominations for the Industry Trade Advisory Committees*, 83

Fed. Reg. 21,813 (U.S. Trade Representative, May 10, 2018). The Industry Trade Advisory

Committees established pursuant to this authority perform (among other things) "advisory

functions relevant to U.S. trade policy matters." *Id.*

Consultation with advisory committees established pursuant to section 2155 qualifies as

consultation with "representatives" of the domestic industry. *See* Mot. to Dismiss at 22-23

(quoting 19 U.S.C. §§ 2155(a), 2413(a)(3)). Thus, the Trade Representative's consultation with

the "appropriate advisory committees"—as discussed in the notice of modification—satisfies the

consultation requirement. Ex. 30 at 7, ECF No. 41-30. Specifically, the Trade Representative

explained that it had taken account of "the advice of . . . appropriate advisory committees." Ex.

30 at 7, ECF No. 41-30. In doing so, the Trade Representative consulted with representatives of

the domestic industry, as required by the statute. 19 U.S.C. § 2417(a)(2).

In addition, the Trade Representative engaged in further consultation in October 2022

and May 2024. *See* Mot. to Dismiss at 24-25 (citing Ex. 13, ECF No. 41-13; Ex. 17, ECF No.

41-17). On October 17, 2022, the Trade Representative invited comments—without limitation—

regarding "other actions that could be taken (including actions against other products or

services)." Ex. 13 at 3, ECF No. 41-13. After the President's direction, the Trade

Representative solicited comment—again, without any limitation—regarding "the effectiveness"

of the proposed modification on eliminating China's unfair practices regarding technology

transfer, and "the effect" of the proposal on the U.S. economy, including consumers. Ex. 17 at

5-6, ECF No. 41-17.

Retractable's new arguments do not show otherwise.  For example, Retractable now argues "{i}nitially, the USTR solicited comments *only* from those who benefited from the trade action, which did not include any representatives of the domestic needle and syringe industry." Pl. Opp. at 13 (citing ECF No. 9-2 at 2) (emphasis added).  But this argument misunderstands the difference between the consultation requirement to modify the action in section 2417(a)(2) and the notification requirement for the "Review of Necessity" in section 2417(c).  The latter "Review of Necessity" applies before the four-year anniversary of a 301 action on which the action with otherwise automatically terminate.  19 U.S.C. § 2417(c)(1), (2).  At that posture, the Trade Representative must *provide notice* to the petitioner (if any) and representatives of the domestic industry that benefit from the action of the potential for termination and of the opportunity to request that the 301 action continue.  19 U.S.C. § 2417(c)(1), (2).  The Trade Representative complied with this obligation to provide notice to representatives of the domestic industry that benefitted from the action, resulting in multiple requests to continue the existing section 301 actions.  *See* Ex. 11 at 1, ECF No. 41-11; Ex. 13 at 2-3, ECF No. 41-13.  That does not affect the Trade Representative's later consultation with advisory committees and other representatives of the domestic industry before modifying the section 301 action.[7]

Retractable further claims that the Trade Representative's request for public comments in May 2024 "was limited to *only* those 'other interested parties' who would advocate for a tariff that is higher than the 50% level set by the President."  Pl. Opp. at 13 (emphasis added).  But this

---

[7]  There are separate statutory requirements for the Trade Representative to consult with representatives of the domestic industry and to allow for presentation of views by interested persons when modifying an action.  19 U.S.C. § 2417(a)(2).  However, the statute does not require specific procedures for either provision and—particularly in a large proceeding involving many disparate industries—there is no prohibition on the Trade Representative using notice and comment procedures to engage in consultation *and* to allow for presentation of views, in addition to consultation with private sector advisory committees.

allegation does not "plausibly suggest an entitlement to relief." *See Ashcroft*, 556 U.S. at 681. The proposed modification cited by Retractable—and incorporated by reference in the complaint—shows that the Trade Representative did not limit comments on the proposal. *See* Ex. 17 at 5-6, ECF No. 41-17. Not only did the Trade Representative request feedback on "the effectiveness of the proposed modification," Ex. 17 at 6, ECF No. 41-17, but "a large number of comments" identified concerns with duties on enteral syringes specifically, resulting in an exclusion through January 1, 2026, Ex. 30 at 22, ECF No. 41-30. Thus, the well-pleaded facts in Retractable's complaint do not state a claim that the Trade Representative failed to consult with representatives of the domestic industry.

Overall, as discussed in our motion and not rebutted by Retractable, the statute does not specify how consultation with representatives of the domestic industry must occur—"leaving the Trade Representative free to choose the most appropriate method." Mot. to Dismiss at 25-26 (citing *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978); *FCC v. Schreiber*, 381 U.S. 279, 290 (1965)). The requirement for consultation with "representatives" of the domestic industry is also a broad standard, leaving the Trade Representative free to consult with Industry Trade Advisory Committees established under 19 U.S.C. § 2155, or other members of the domestic industry. The complaint makes no plausible allegation that the Trade Representative failed to engage in any consultation with such representatives of the domestic industry.

## **CONCLUSION**

For these reasons, we respectfully request that the Court dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6).

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

OF COUNSEL

MEGAN M. GRIMBALL
PHILIP A. BUTLER
Office of the United States Trade
Representative

/s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

/s/ Emma E. Bond
EMMA E. BOND
Senior Trial Counsel
U.S. Department of Justice, Civil Division
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-2034
Email: Emma.E.Bond@usdoj.gov

EMMA L. TINER
International Trade Litigation
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

December 10, 2024

*Attorneys for Defendants*

21

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains no more than 6,375 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Emma E. Bond